MILAGROS ACOSTA QUIÑONES y OTROS, demandantes y recurridos, *v.* MILTON MATOS RODRÍGUEZ, ETC., demandados y recurrentes.

*Número:* RE-93-486          *Resuelto:* 5 de abril de 1994

*Ricardo F. Cacho Rodríguez*, abogado de la parte recurrente; *Arcadio Toro Goyco*, abogado de la parte recurrida.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

Mediante recurso de revisión comparecen ante nos Molina Auto Sales, Inc. y Universal Insurance Company para solicitar la revocación de una sentencia del Tribunal Superior, Sala de Mayagüez, que declaró con lugar una demanda instada por Milagros Acosta Quiñones, Hermitanio Jusino Acosta y la sociedad legal de gananciales compuesta por ambos, ordenando a los demandados recurrentes a pagar solidariamente a la parte demandante recurrida la cantidad de noventa y nueve mil dólares ($99,000) por concepto de daños y perjuicios. El 10 de diciembre de 1993 emitimos una resolución en la cual concedimos a los demandantes recurridos un término de veinte (20) días para

que comparecieran por escrito y mostraran causa por la cual no debía expedirse el auto solicitado y revocar la sentencia del Tribunal Superior, Sala de Mayagüez. Revocamos.

I

El 24 de junio de 1988, a las 11:40 A.M., mientras la codemandante, Milagros Acosta Quiñones, conducía su automóvil de norte a sur por la carretera estatal Núm. 101, al llegar al kilómetro tres (3), hectómetro uno (1) de esta carretera, donde hay una curva amplia, se vio involucrada en un accidente de tránsito con la guagua marca Nissan Coupe —modelo 1988— conducida por el codemandado Milton Matos Rodríguez y que era propiedad de la codemandada Molina Auto Sales, Inc.([1]) El automóvil de la codemandante fue pérdida total. La codemandante resultó gravemente herida y, además, quedó afectada de los nervios como resultado del accidente.

Los codemandantes presentaron su demanda el 23 de enero de 1990. El término para presentar la demanda vencía el 24 de junio de 1989. Por lo tanto, la demanda fue presentada un (1) año y siete (7) meses después de haber surgido la causa de acción bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.([2]) En la demanda, la parte demandante alegó que el término prescriptivo de un (1) año fue interrumpido mediante dos (2) cartas enviadas por la codemandada, Universal Insurance Company, a la codemandante con fecha de 13 de octubre de 1988 y 26 de enero de 1989. Los codemandantes alegaron que dichas cartas constituían un reconocimiento de deuda por parte de la

---

([1]) La codemandada Universal Insurance Company es la compañía que asegura a Molina Auto Sales, Inc. contra accidentes de automóviles.

([2]) "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización." Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

codemandada y que, por lo tanto, se había interrumpido el término prescriptivo de la acción.

Ambas cartas, firmadas por el ajustador de la compañía de seguros, evidencian que las partes estaban en conversaciones preliminares para llegar a un acuerdo de transacción. La Carta de 13 de octubre de 1988, en lo pertinente, expresa lo siguiente:

> En mi última visita a su residencia el día 7 de octubre de 1988, estando presente su esposo, discutimos por segunda ocasión su caso. Como es de su conocimiento, anteriormente nos habíamos reunido con el mismo propósito, donde le indiqué que luego de evaluar su caso, entiéndase a base de negligencia comparada, le hice una oferta por $3,000.00.
>
> Sobre este particular, tanto usted como su esposo, rechazaron la oferta y me indicaron que la suma de $35,000.00 podían considerarla favorablemente.

La Carta de 26 de enero de 1989, en lo pertinente, expone lo siguiente:

> Por este medio le comunico que desconozco totalmente las razones que puedan existir de su parte para no autorizarnos a obtener todos los récords médicos suyos.
>
> Sobre el particular, vuelvo a recalcarle que sin esos documentos bajo ningún concepto podremos efectuar una evaluación de su caso que nos permita hacerle una oferta en transacción razonable.

Las partes demandadas recurrentes contestaron la demanda, formularon una reconvención y levantaron como defensa afirmativa que la causa de acción traída por la parte demandante estaba prescrita. Luego de un sinnúmero de trámites procesales, el Tribunal Superior, Sala de Mayagüez, dictó la sentencia en la cual declaró sin lugar la reconvención formulada por la parte demandada y con lugar la demanda incoada por la parte demandante. Condenó a los codemandados a pagar solidariamente a la parte demandante la cantidad total de noventa y nueve mil dólares ($99,000) en concepto de daños y perjuicios, y las costas y gastos del litigio.

Los codemandados presentaron en término un recurso de revisión que sostiene que el tribunal de instancia erró al no desestimar la demanda por estar prescrita de su faz. Oportunamente, concedimos a la parte demandante un término para que compareciera por escrito a mostrar causa por la cual no debía expedirse el auto solicitado y revocarse la sentencia del Tribunal Superior. Luego de estudiar el escrito en cumplimiento de orden presentado por la parte demandante, procedemos según el curso decisivo intimado anteriormente.

## II

Para resolver el caso de marras sólo es pertinente considerar el señalamiento en cuanto a que la demanda estaba prescrita. Veamos.

En esencia, la parte demandante alega que las cartas que le fueron enviadas por la codemandada Universal Insurance Company, constituyen un reconocimiento de deuda por parte de la codemandada y que, por lo tanto, se interrumpió el término de prescripción de la acción.

El Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, rige lo pertinente a las acciones que prescriben por el transcurso de un (1) año: "La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado".

A su vez, el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, expone las tres (3) formas en las cuales se interrumpe la prescripción de las acciones. Se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

Una norma que ha sido reiterada, con uniformidad, por este Tribunal es que "[n]o puede concederse ...

como acto de reconocimiento de deuda las conversaciones y gestiones que sobre una posible transacción llevan a efecto las partes". *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 480 (1980).

La regla sobre el alcance de conversaciones y ofertas de transacción es que "el hecho de que un litigante haga ofertas de transacción o de arreglo antes del pleito o durante su tramitación, nunca puede estimarse por sí solo como un reconocimiento de su responsabilidad, y a lo sumo lo que significa es que desea evitar el pleito o su continuación, por lo que tal clase de prueba nunca debe ser permitida por los tribunales". *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, págs. 480–481.

Según indica Wigmore, "la oferta meramente implica un deseo de lograr sosiego (*peace*) y no constituye una aceptación de que se ha incurrido en falta". (Traducción nuestra.) IV *Wigmore on Evidence* Sec. 1061, pág. 28 (1940). El Estado, en su deseo de fomentar la paz entre los ciudadanos, alienta las transacciones. Es por esta razón que hemos resuelto en repetidas ocasiones que no es admisible, en pleitos civiles, una prueba sobre las negociaciones y ofertas de transacción como indicadoras de la aceptación de responsabilidad.

■ La Regla 22(B) de Evidencia adoptadas en 1979 recoge esta norma. La regla establece que "[e]videncia de que una persona ha provisto, ofrecido o prometido proveer, o de que una persona ha aceptado u ofrecido o prometido aceptar, dinero o cualquier otra cosa para transar una reclamación no es admisible para probar responsabilidad ...". 32 L.P.R.A. Ap. IV.

■ El reconocimiento de una deuda por parte del deudor tiene que ser " 'espontáneo o directamente verificado por el deudor de un modo inicial y con la específica intención de reconocer la pervivencia de un derecho contrario' ". *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, pág. 482.

Examinada la normativa pertinente, procede que la apliquemos a los hechos ante nos.

## III

La controversia que ha de resolverse en el caso de marras es si las Cartas de 13 de octubre de 1988 y de 26 de enero de 1989 que envió la codemandada, Universal Insurance Company, a la demandante constituyen un acto de reconocimiento de deuda según lo requiere el Art. 1873 del Código Civil, *supra*, para interrumpir el término prescriptivo de la causa de acción.

En la primera carta, el ajustador menciona una oferta de transacción que fue rechazada por los codemandantes y hace los esfuerzos por hacer una próxima oferta de transacción. En la segunda carta, el ajustador es persistente en que necesita los expedientes médicos de la codemandante para poder hacer una oferta de transacción razonable. En ningún momento, en estas cartas, la compañía de seguros hace un reconocimiento claro, espontáneo e inequívoco de la deuda. Del lenguaje de las cartas citadas se desprende que su propósito era llegar a un acuerdo. Es claro que la codemandada —Universal Insurance Company— estaba haciendo las gestiones preliminares para hacer una oferta de transacción a los demandantes.

El accidente del cual surgió la causa de acción de acuerdo con el Art. 1802 del Código Civil, *supra*, ocurrió el 24 de junio de 1988. El término prescriptivo de la acción de daños se computa desde el momento en el cual el agraviado conoce o sabe acerca de la existencia del daño. *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990). El término de prescripción para las acciones que surgen bajo el Art. 1802 del Código Civil, *supra*, es un (1) año, por lo tanto la acción prescribía el 23 de junio de 1988. El término de prescripción no fue interrumpido por ninguna de las tres (3) formas que establece el Art. 1873 del Código Civil, *supra*. Veamos.

La primera forma que expone el Art. 1873 del Código Civil, *supra*, es por el ejercicio de la acción ante los tribunales. Surge claramente de los hechos que la demanda original se presentó luego de haber transcurrido un (1) año y siete (7) meses desde la ocurrencia de los hechos. Por lo tanto, la parte demandante no cumplió con este primer requisito.

La segunda forma que estipula el artículo citado es por reclamación extrajudicial del acreedor. La interrupción estatuida en este artículo " 'es la manifestación inequívoca de [quien], amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo' ". *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 751 (1992). En cuanto a la forma del acto de la reclamación, Díez-Picazo expone:

> ... La Ley no exige, en este punto, ninguna forma especial y donde la ley no distingue tampoco debemos nosotros distinguir. En cualquier forma que sea hecha la reclamación posee valor interruptivo. ... En todo caso, se podrá plantear un problema de prueba —de la existencia de la reclamación y de su fecha— pero no un problema de forma. L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, Cap. IV(2), pág. 40.

Para que la interrupción extrajudicial surta efecto, la reclamación o pretensión tiene que ser dirigida al sujeto pasivo del derecho y debe ser recibido por éste. *Zambrana Maldonado v. E.L.A.*, supra. Le corresponde al titular del derecho que alegue haber hecho una reclamación extrajudicial probarlo mediante una prueba directa o circunstancial. Un examen de los autos del caso revela con claridad que la parte demandante no alegó ni probó mediante prueba directa ni prueba circunstancial haber hecho una reclamación extrajudicial a ninguno de los codemandados.

Aun si aceptamos que la Carta de 13 de octubre de 1988 constituye una prueba circunstancial de que hubo una re-

clamación extrajudicial verbal por parte de los demandantes a la Universal Insurance Company que interrumpía el término prescriptivo, el nuevo término prescribía el 13 de octubre de 1989. La demanda fue presentada el 24 de enero de 1990, es decir, tres (3) meses más tarde de la fecha cuando prescribía el término. En conclusión, la demanda estaría prescrita de todas formas.

Tampoco hay evidencia de que hubo actividad entre la aseguradora y los codemandantes después de la Carta de 13 de octubre de 1988. La Carta de 26 de enero de 1989, que envió la aseguradora a los codemandantes, tenía el propósito de pedirles que firmaran una autorización para obtener sus récord médicos y, así, poder hacerles una oferta de transacción razonable. Dicha carta no constituye una prueba circunstancial de que hubo otra reclamación extrajudicial de la deuda que interrumpiera el término prescriptivo.

La tercera forma de interrumpir el término prescriptivo que establece el Art. 1873 del Código Civil, *supra*, es mediante cualquier acto de reconocimiento de la deuda por el deudor. Hemos dejado establecido el principio jurisprudencial y de derecho de que las ofertas de transacción no constituyen un reconocimiento de deuda.

Luego de evaluar las cartas que envió la codemandada a la parte demandante determinamos, por su contenido, que constituyen, principalmente, gestiones incidentales a una oferta de transacción y no interrumpieron el término prescriptivo de un (1) año. Además, aun si asumiéramos que la Carta de 13 de octubre de 1988 constituye prueba circunstancial de una reclamación extrajudicial, la demanda fue incoada un (1) año y tres (3) meses después de esta gestión. Por todo lo cual, es forzoso concluir que la demanda original estaba prescrita a la fecha de su presentación.

Aunque somos conscientes de los daños sufridos por Milagros Acosta Quiñones y Hermitanio Jusino Acosta, no podemos soslayar la importancia en nuestro ordenamiento de

la figura de la prescripción y de que los demandantes tienen que ser diligentes en el ejercicio de sus derechos, y que "las reclamaciones válidas se accionan inmediatamente y no se abandonan". *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943, 950 (1991). Véase *Rivera Castillo v. Mun. de San Juan*, 130 D.P.R. 683, 695 (1992).

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri disintió con opinión escrita, a la cual se unieron los Jueces Asociados Señores Negrón García y Alonso Alonso.

— ·O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la que se unen los Jueces Asociados Señores Negrón García y Alonso Alonso.

En su opinión en este caso, la mayoría entremezcla dos cuestiones jurídicas que, a pesar de estar relacionada una con la otra, son distintas entre sí. Llega, además, a un resultado que, respetuosamente, considero desacertado e injusto.

La cuestión propiamente ante nos es si determinadas negociaciones entre las víctimas de un grave accidente automovilístico y la aseguradora del causante del accidente, según se reflejan en las cartas enviadas por esa aseguradora a dichas víctimas, interrumpieron el término prescriptivo de la acción de daños y perjuicios que las víctimas tenían derecho a incoar bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. La mayoría en su opinión examina brevemente la normativa sobre los efectos jurídicos de las ofertas de transacción y resuelve que no se interrumpió la prescripción en este caso porque las gestiones realizadas por la aseguradora para tratar de llegar a una transacción no constituyeron *un acto de reconocimiento de deuda*. A renglón seguido, sin examinar a fondo esta otra

parte de la normativa aplicable, como si se tratase de una ocurrencia súbita, la mayoría resuelve además que tampoco se interrumpió la prescripción por *reclamación extrajudicial.*

No puede disputarse de modo alguno que las gestiones en cuestión no constituyeron una aceptación de responsabilidad por parte de la compañía de seguros. Coincido plenamente con la mayoría en que esa compañía sólo estaba en trámites dirigidos a lograr una transacción con las víctimas y en que ello no aparejaba un reconocimiento de deuda. *Tal determinación, sin embargo, no resuelve totalmente la cuestión ante nos de si se interrumpió la prescripción o no.* Las negociaciones entre las víctimas y la aseguradora pueden haber dado lugar a que se configurara una *reclamación extrajudicial* por las víctimas, aunque no haya mediado un *reconocimiento de deuda* por la aseguradora. Como reconoce la propia mayoría en su opinión, son *dos eventos jurídicos totalmente distintos entre sí.* Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303. Como tal, en un caso como el de marras, *ambas* posibilidades requieren una consideración cabal y separada.

En el caso de marras ciertamente no hubo un reconocimiento de deuda, pero sí medió una reclamación extrajudicial. Sin embargo, la mayoría desacertadamente no lo resuelve así. En mi criterio, la mayoría despacha muy ligeramente la cuestión de si en este caso hubo una reclamación extrajudicial que interrumpiese la prescripción. Cita algo de la normativa que rige el asunto pero no la aplica con pleno sentido jurídico. Sobre todo, no se analiza el asunto a fondo con miras a la naturaleza y los propósitos de las instituciones jurídicas en cuestión y a las circunstancias especiales del caso.

En la primera de las cartas enviada por la aseguradora a las víctimas, citada por la mayoría en su opinión, *la aseguradora reconoce expresamente* no sólo que las víctimas rechazaron la primera oferta de transacción de la compa-

ñía de seguros de $3,000, sino que además dichas víctimas le indicaron a la compañía "que la suma de $35,000.00 podían considerarla favorablemente". Opinión mayoritaria, pág. 671. Es decir, la aseguradora admite que las víctimas reclamaron una cantidad mayor para llegar a un acuerdo. Esta reclamación de las víctimas satisfizo cabalmente los requisitos que deben cumplir las reclamaciones extrajudiciales para ser efectivas, conforme lo pautado extensamente en el caso clave *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471 (1980). Se trata evidentemente de un acto de declaración de voluntad para requerir un comportamiento, que fue recibido por el obligado. *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, pág. 476.

La reclamación extrajudicial aludida dio lugar a que la compañía de seguros procediera entonces a *evaluarla*. En la referida Carta de 13 de octubre de 1988, la aseguradora, después de reconocer la reclamación de $35,000 de las víctimas, les solicitó a éstas la entrega de todos los certificados médicos acreditativos de las lesiones sufridas por las víctimas, y expresamente les explicó que necesitaba tales certificados para poder *evaluar* su reclamación a la luz de éstos, y de esa forma poder emitir una decisión.

Luego de haber enviado la carta aludida, el 25 de enero de 1989 el ajustador de la compañía de seguros visitó por tercera vez a las víctimas en su residencia. En esta ocasión obtuvo copias de algunos de los certificados médicos que la compañía había requerido en la Carta de 13 de octubre de 1988. Al día siguiente de esta tercera visita, la aseguradora volvió a escribirle a las víctimas *pidiéndoles el resto de los certificados médicos*. Es decir, la compañía de seguros quería algo más de lo que se le entregó el 25 de enero, y por eso en su Carta de 26 de enero de 1989 les dice a las víctimas:

> ... vuelvo a recalcarle que sin esos documentos bajo ningún concepto podremos efectuar una evaluación de su caso que nos permita hacerle una oferta en transacción razonable.

De todo lo anterior es evidente que las víctimas habían hecho una reclamación extrajudicial que *seguía vigente* ante la compañía de seguros mientras ésta la evaluaba. Es evidente también que las víctimas entendían que estaban en un *proceso de negociación* que posiblemente daría lugar a un acuerdo, que haría innecesario el trámite judicial. Su participación en ese proceso implicaba necesariamente la voluntad de hacer valer su derecho a una indemnización. No puede estimarse de modo razonable alguno que su participación en el proceso de negociación constituyera un *abandono* o *inercia* en el ejercicio de sus derechos. *De Jesús v. Chardón*, 116 D.P.R. 238 (1985). Por el contrario, tratándose de personas que no eran legas en estos asuntos —como las víctimas no lo eran— su participación en las negociaciones es prueba clara de su intención de ejercitar sus derechos. *Feliciano v. A.A.A.*, 93 D.P.R. 655 (1966). Es además aplicable a este caso la acertada cita que hicimos del eminente comentarista Díez-Picazo, en *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 752 (1992):

> "La Ley no exige, en este punto, ninguna forma especial y donde la ley no distingue tampoco debemos nosotros distinguir. *En cualquier forma en que sea hecha la reclamación posee valor interruptivo.* ... En todo caso, se podrá plantear un problema de prueba —de la existencia de la reclamación y de su fecha— pero no un problema de forma." (Énfasis suplido.)

Conforme a la doctrina civilista, en Puerto Rico ya hemos resuelto claramente que la prescripción extintiva es una institución que " 'se basa en el imperativo de castigar la inercia en el ejercicio de los derechos [y así] ... evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones' ". *Zambrana Maldonado v. E.L.A.*, supra, pág. 751. Véase *De Jesús v. Chardón*, supra. Su propósito claro es darle efectividad al tráfico jurídico, evitando que el deudor o sujeto pasivo de una relación jurídica sea indebidamente afectado por las demoras o abandono del titular activo. Íd. La clara presencia de los elementos aludidos de

inercia o abandono son esenciales para que sea justificable moral y jurídicamente una determinación de que en determinado pleito medió la prescripción debido a que que tal determinación, al conculcar la acción para reclamar un derecho, tiene el grave y oneroso efecto de negar su vindicación. Es por ello que Díez-Picazo entiende que una reclamación extrajudicial posee valor interruptivo no importa la forma en que sea hecha, y que Albaladejo juzgue similarmente que deben considerarse muchas formas posibles de hacer la reclamación extrajudicial, "siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad, o de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago". M. Albaladejo García, *Comentario al Artículo 1.973 del Código Civil,* 1977 Rev. Der. Priv. 987, 989 (1977). El fundamental valor jurídico de permitirle a las partes vindicar sus derechos judicialmente requiere esta concepción liberal de la reclamación extrajudicial.

En el caso ante nos las víctimas sufrieron daños serios, incluyendo a una de ellas, quien resultó gravemente herida. Estas víctimas son sujetos activos de importantes derechos que no deben denegarse trivialmente. Dichas víctimas actuaron prestamente en el ejercicio de sus derechos. De ningún modo puede estimarse que actuaron de forma tal que quedaran satisfechos los propósitos jurídicos que le darían sentido y justificarían la aplicación aquí de la institución de la prescripción. Dichas víctimas no abandonaron su causa de acción ni incurrieron en dilaciones que dificultasen la adjudicación de su reclamación. No actuaron de modo tal que afectara indebidamente los derechos de los demandados. Por el contrario, su reclamación era objeto de un proceso de negociación con la aseguradora. Ésta, con su consabida experiencia en estos asuntos y su fácil acceso al asesoramiento jurídico, era la única que tenía interés en postergar o darle largas al asunto. Por razones de equidad, si hubiese alguna duda sobre la cuestión

de la prescripción —y yo no creo que la haya—([1]) esa duda debe resolverse *a favor de las víctimas.* Ello sería lo justo y estaría conforme con el reiterado principio, que hemos desarrollado en otro contexto, de que los casos deben verse en sus méritos. *Banco de la Vivienda v. Carlo Ortiz,* 130 D.P.R. 730 (1992); *Mercado v. Panthers Military Soc., Inc.,* 125 D.P.R. 98 (1990); *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 D.P.R. 664 (1989); *Garriga Gordils v. Maldonado Colón,* 109 D.P.R. 817, 822 y 823 (1980). De esta forma, además, se evitaría el efecto que tiene la decisión de la mayoría de darle carta blanca a la perniciosa práctica de algunas aseguradoras de entretener con ofertas de transacción a las ingenuas víctimas de accidentes mientras transcurre el período prescriptivo para incoar la acción judicial correspondiente. Nótese que la mayoría en su opinión ni siquiera exige que en estos casos la aseguradora le advierta a las víctimas que sus derechos pueden disiparse mientras "negocian" una transacción con ella.

En resumen, pues, para mí no tiene sentido jurídico alguno, y constituye una injusticia, aferrarse a una interpretación restrictiva y técnica en extremo de la figura de la prescripción, para denegar el derecho de acción a víctimas que han sufrido graves daños y que no se han cruzado de brazos en su reclamación, sobre todo cuando ello tiene el efecto de permitir que continúe ocurriendo la aludida práctica indebida de algunas aseguradoras. Por ello, DISIENTO.

---

([1]) En el complejo proceso ante el foro de instancia, en el cual las víctimas resultaron victoriosas y obtuvieron una importante suma como indemnización, el asunto en controversia nunca fue la cuestión de la prescripción, sino más bien lo relativo a la prueba de algunos de los daños.