En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| GLADYS DE LEON CRESPO POR SI. ET AL.<br><br>    Demandantes-recurrentes<br><br>    V.<br><br>CAPARRA CENTER, TAMBIEN CONOCIDA COMO SAN PATRICIO PLAZA SHOPPING CENTER, ANTILLES INSURANCE CO.<br><br>    Demandados-recurridos | Revisión<br><br>99TSPR24 |

Número del Caso: RE-94-595

Abogados de la Parte Recurrente: Lic. Salvador Maldonado Miranda

Abogados de la Parte Recurrida: Lic. Antonio Marrero Candelaria

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, San Juan

Juez del Tribunal de Primera Instancia: Hon. Antonio J. Negroni Cintrón

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 3/19/1999

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Gladys de León Crespo por
sí, et al.

    Demandantes-recurrentes

      vs.                   RE-94-595       REVISION

Caparra Center, también
conocido como San Patricio
Plaza Shopping Center,
Antilles Insurance Co.

    Demandados-recurridos


    **OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 19 de marzo de 1999

Se nos plantea en el presente recurso la siguiente interrogante: si una carta mediante la cual se asevera que el acreedor de cierto derecho acudirá a los tribunales constituye una reclamación extrajudicial capaz de interrumpir el término prescriptivo. De ser la respuesta en la afirmativa, debemos decidir, además, si la interrupción acaecida benefició, adicionalmente, a su cónyuge y a la sociedad de gananciales compuesta por ambos. Veamos.

I

Gladys de León Crespo, alegadamente, sufrió una caída en el estacionamiento del Centro Comercial San Patricio, el día <u>13 de julio de</u>

1992. La caída, sostiene ésta, fue producto del asedio de unos canes, que hicieron de dicho predio su hábitat natural.

En carta fechada 20 de agosto de 1992, de León Crespo trajo a la atención de la aseguradora del centro comercial algunos de los gastos médicos incurridos como consecuencia del accidente. El 31 de diciembre de 1992, de León Crespo, a través de su representante legal, le cursó otra carta a la aseguradora cuyo contenido, básicamente, describía el accidente, imputaba negligencia al centro comercial, y reclamaba una indemnización no menor de ocho mil dólares ($8,000), además de los gastos médicos ascendentes a ochocientos cincuenta dólares ($850).

El 7 de enero de 1993, la aseguradora contestó, negando su responsabilidad por lo que denominó "problemas sociales[1]". Asimismo, la aseguradora indicó estar dispuesta a honrarle un pago nominal para así evitar lo que consideraron como un pleito innecesario. En respuesta a esta carta, el 16 de julio de 1993, armada con nueva representación legal, De León Crespo le replicó a la aseguradora. En esta misiva, le indicó su desacuerdo con las posturas asumidas por la aseguradora, principalmente, la discrepancia en cuanto a la alegada ausencia de negligencia.

El 5 de agosto de 1993, de León Crespo le envió copia de sus récords médicos a la aseguradora. Por su parte, la aseguradora replicó el 12 de agosto de 1993, reiterando que, a su juicio, no medió negligencia alguna por parte del

centro comercial. Por último, el 13 de septiembre de 1993, ante la evidente divergencia de criterio, de León Crespo le indicó a la aseguradora que instarían la acción correspondiente en los tribunales.

Tal como había pronosticado, de León Crespo, junto a Roberto Zacour, y la sociedad legal de gananciales compuesta por ambos, radicó demanda por daños y perjuicios, el 6 de septiembre de 1994. Enterada de la demanda, la aseguradora solicitó del tribunal que dictase sentencia sumaria a su favor, porque, alegadamente, la reclamación estaba prescrita. Los demandantes se opusieron. Argumentaron que el término prescriptivo quedó interrumpido por las reclamaciones extrajudiciales por ellos realizadas tal y como lo permite el Artículo 1873 del Código Civil, 31 L.P.R.A. sec. 5303.

El 14 de noviembre de 1994, el antiguo Tribunal Superior, Sala de San Juan (Hon. Antonio J. Negroni Cintrón, Juez), dictó sentencia desestimando la demanda por razón de prescripción. Inconformes, los demandantes solicitaron al tribunal que reconsiderara su dictamen; esto, pues, alegadamente, la misiva del 13 de septiembre de 1993, provocó que comenzara a decursar un nuevo término prescriptivo. La misma fue denegada.

Oportunamente, acudieron ante este Tribunal los demandantes-recurrentes, en solicitud de que expidiéramos el

---

[1] En su carta, la aseguradora denominó "problema social" a

auto de certiorari y revocáramos la Sentencia emitida. Plantearon que erró el tribunal de instancia al desestimar la demanda por prescripción pues ésta fue interrumpida extrajudicialmente.

El 17 de febrero de 1995, ordenamos a los demandados-recurridos que mostraran causa por la cual este Tribunal no debía expedir el auto de certiorari solicitado y dictar Sentencia revocatoria de la sentencia recurrida. En cumplimiento de dicha orden, han comparecido los demandados-recurridos. Resolvemos.

II

En su escrito ante nos, los recurrentes plantean que la acción no estaba prescrita pues las cartas enviadas interrumpieron el período prescriptivo. Añaden que erró el tribunal al desestimar, toda vez que su dictamen se apoyó en nuestra decisión en Acosta Quiñones v. Matos Rodríguez, Opinión y Sentencia de 5 de abril de 1994. Arguyen que la interrupción allí interpretada fue el reconocimiento de la deuda por el deudor y no la reclamación extrajudicial, que fue el método seleccionado por ellos.

Por su parte, la aseguradora, luego de hacer una exégesis sobre la interrupción de la prescripción, insiste en que la acción que nos ocupa está prescrita. Específicamente, indica que la única carta que pudo haber

los perros callejeros.

interrumpido el término prescriptivo fue la enviada el 31 de diciembre de 1992. Añade que el resto de las cartas sólo constituían gestiones encaminadas a transigir el asunto. En la alternativa, los demandados-recurridos argumentan que, del contenido de la carta del 13 de septiembre, no surge reclamación alguna; describen la misma como una informativa. Afirman que, dada la naturaleza "informativa" de dicha carta, no se puede reconocer que, en efecto, hubo una reclamación extrajudicial.

## III

Es harto sabido que las acciones encaminadas a exigir responsabilidad civil extracontractual prescriben al transcurrir un año. Artículo 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Bajo la teoría cognoscitiva del daño, imperante en nuestra jurisdicción en virtud de las disposiciones del artículo antes citado, el término prescriptivo comienza a decursar desde el momento en que la víctima del daño tiene conocimiento del mismo. Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 361 (1988); Colón Prieto v. Géigel, 115 D.P.R. 232, 243-247 (1984).

Nuestro ordenamiento jurídico permite que el término prescriptivo de las acciones quede interrumpido por una de tres ocurrencias: el ejercicio de la acción ante los tribunales, la reclamación extrajudicial del acreedor, y por

cualquier acto de reconocimiento de la deuda por el deudor. Artículo 1873 del Código Civil, 31 L.P.R.A. sec. 5303; Suárez Ruiz v. Figueroa Colón, Opinión y Sentencia de 25 de marzo de 1998. Al así establecerlo, la Asamblea Legislativa se inspiró en motivos de justicia y de conveniencia social.[2]

"La prescripción extintiva tiene su fundamento en la necesidad de poner término a las situaciones de incertidumbre en el ejercicio de los derechos y en la presunción de abandono por parte de su titular."[3] Dado que la interrupción de la prescripción se cimienta en la actividad o ruptura de la inercia, al enfrentarnos a una controversia como la de autos, es necesario determinar si la postura asumida por los acreedores del derecho es representativa de la inercia de quienes, al no reclamar su derecho, lo han abandonado. Véase, Martínez Arcelay v. Peñagarícano Soler, Opinión y Sentencia de 18 de marzo de 1998; García Aponte v. E.L.A., Opinión y Sentencia de 8 de febrero de 1994; Zambrana Maldonado v. E.L.A., Opinión y Sentencia de 30 de enero de 1992.

La reclamación extrajudicial sirve varios propósitos fundamentales, siendo los principales: interrumpir el transcurso del término prescriptivo de las acciones; fomentar las transacciones extrajudiciales; y, notificar, a

---

[2] R. Hernández Colón, Práctica jurídica de Puerto Rico, derecho procesal civil, 1997, Michie, San Juan, P.R., pág. 82.

[3] Puig Brutau, J., Caducidad, prescripción extintiva y usucapión, Barcelona, Ed. Bosch, 1988, pág. 26.

grandes rasgos, la naturaleza de la reclamación. En la reclamación extrajudicial, "no hay relación limitativa hecha por la ley sobre qué actos son los que se incluyen en esta causa interruptiva, admitiendo como tales todos aquéllos en que la voluntad del acreedor quede patente." Galib Frangie v. El Vocero de P.R., Opinión y Sentencia de 6 de junio de 1995. Consistentemente, hemos reiterado que nuestro ordenamiento jurídico no exige forma específica para interrumpir la prescripción. Zambrana v. E.L.A., ante, citando a Díez Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964. Ante la infinidad de gradaciones entre lo que es un recordatorio y una reclamación, el comentarista Albaladejo[4] expresa que:

> "...entre el mero recordatorio de una deuda, sin ninguna dosis de reclamar su paga, y el puro acto de exigir de forma inexorable éste hay una serie de posibilidades intermedias, en las que debe entenderse que hay reclamación y, por tanto, interrupción de la prescripción siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad y de forma más o menos tajante o apremiante, se muestra la decisión de obtener el pago."

Para la más cabal comprensión del recurso, procedemos a reproducir la carta suscrita el 31 de diciembre de 1992 a la aseguradora.

"31 de diciembre de 1992

Sr. Juan Amador

---

[4] Albaladejo, M., *Comentario al Artículo 1973 del CC.*, Revista de Derecho Privado, pág. 989, (1977).

Ajustador
Anglo Puerto Rican Insurance Corp.


Mediante la presente confirmo las conversaciones telefónicas sostenidas en torno a la reclamación previamente instada por mi representada Gladys de León Crespo en contra del asegurado de referencia.

Como bien surge de la documentación que ya obra en sus expedientes, mi representada Gladys de León Crespo sufrió una caída en el área de estacionamientos del Centro Comercial San Patricio Shopping Center propiedad de su asegurada Caparra Center Corporation. La caída aquí aludida ocurrió el día 23 de julio de 1992 cuando la Sra. Gladys de León Crespo discurría por el área de estacionamiento de dicho centro comercial. En o alrededor del área de estacionamiento y almacen de las tiendas Kmart, la Sra. Gladys de León Crespo fue acosada por varios perros que pernoctaban en dichas facilidades. Tratando de evadir ser agredida por dichos perros, mi representada cayó al suelo sufriendo traumas en el área baja de la espalda y otras complicaciones las cuales se especifican con más detalles en el informe emitido por el Dr. Gil Weiner.... Que por motivo de lo anterior la Sra. Gladys de León Crespo ha tenido que someterse a un sinnúmero de terapias y tratamientos de naturaleza dolorosa desconociéndose al presente por ser muy prematuro el porciento de impedimento fisiológico.

Es la posición de mi representada al igual que la de este suscribiente que Caparra Center Corporation fue negligente al no mantener sus facilidades seguras y libres de la intervención de estos caninos que según testigos oculares siempre se han encontrado merodiando en dichas facilidades creando por ello peligros innecesarios para los visitantes y clientes del centro comercial.

Estimamos que los daños sufridos por mi representada a raíz de los hechos antes relacionados tiene[sic] un valor monetario no menor de la suma de $8,000 más los gastos que se han incurrido en su tratamiento lo[sic] cuales ascienden a una suma aproximada de $850.

En aras de tratar de resolver este asunto sin intervención de los Tribunales de Justicia,...". (Énfasis suplido.)

En Galib Frangie v. El Vocero de P.R., ante, enumeramos los requisitos que debe cumplir una reclamación extrajudicial para que la misma constituya una interrupción de la prescripción. Dichos requisitos son:

(a)  La reclamación debe ser oportuna, lo cual requiere que se realice antes de la consumación del plazo;

(b)  Es necesaria la legitimación del reclamante. Ello requiere que la reclamación se haga por el titular del derecho o acción cuya prescripción quiere interrumpirse.

(c)  Se requiere idoneidad del medio utilizado para realizar la reclamación.

(d)  Por último, debe existir identidad entre el derecho reclamado y aquél afectado por la prescripción.

La carta antes transcrita (31 de diciembre de 1992), evidentemente constituye una reclamación extrajudicial. La reclamación fue presentada dentro del periodo habil para incoar la acción (oportuna); la efectuó el representante legal de la perjudicada (legitimación); el medio utilizado fue idoneo y existía identidad entre el derecho reclamado en la carta y el afectado por la prescripción.

Dicha carta contiene los elementos intrínsecos de toda reclamación extrajudicial: (a) identifica claramente tanto

al acreedor como al deudor del derecho -la carta deberá ir dirigida a éste último-; (b) contiene, en términos generales, los elementos necesarios en derecho para entablar una reclamación (e.g., en una reclamación por daños y perjuicios: describe el daño, el acto culposo o negligente, y establece la relación causal entre el daño y el acto culposo o negligente); y, (c) requiere del deudor que adopte el comportamiento debido.

La referida carta cumple con lo anterior; va dirigida al sujeto pasivo del derecho; expresa el daño sufrido, imputa negligencia, esboza la relación causal, y, requiere a Caparra Center que adopte el comportamiento debido (indemnizar el daño). En fin, no hay duda de que dicha carta interrumpió el periodo prescriptivo hasta el 31 de diciembre de 1993.

Así, nos corresponde determinar si las cartas cursadas posteriormente --los días 16 de julio, 5 de agosto, y, 13 de septiembre de 1993-- constituyen subsiguientes reclamos extrajudiciales, capaces de interrumpir nuevamente el término prescriptivo. Veamos.

                    "16 de julio de 1993

        Antilles Insurance Company
        Sr. Juan Amador

            Deseamos informarle que desde hoy en adelante representamos a la señora Gladys de León Crespo en la reclamación de epígrafe.

            A tenor con la carta enviada por usted el día 7 de enero de 1992 al compañero Thomas Doran Gelabert, queremos informarle que no estamos de

acuerdo con el planteamiento que no se le puede imputar negligencia a los comerciantes por los problemas sociales que aquejan a la comunidad, ya que entendemos que el problema existente... viene ocurriendo por años..., sin que los dueños del Centro Comercial hagan nada al respecto.

No podemos estar de acuerdo que la Administración de San Patricio Plaza no pueda atribuirse funciones que le corresponden al Estado cuando el dejar de hacerlo perjudica a sus invitados comerciales hasta el punto de ser atacados y recibir lesiones.

Estamos dispuesto[sic] a conversar ampliamente de lo anteriormente expresado y poder llegar a una transacción razonable para ambas partes."

---------------o------------

"5 de agosto de 1993

Antilles Insurance Company
Sr. Juan Amador

Adjunto incluyo copia de Récords Médico[sic] de mi cliente la señora Gladys de León en el caso de referencia."

---------------o---------------

"13 de septiembre de 1993

Antilles Insurance Company
Sr. Juan Amador

Acuso recibo de su carta del 12 de agosto de 1993, en la que me indica que está dispuesto a realizar un pago nominal en el presente caso.

Nosotros muy respetuosamente no compartimos la opinión suya por lo que prontamente radicaremos la debida acción en los Tribunales de Puerto Rico." (Énfasis suplido.)

Toda vez que la demanda en el caso ante nuestra consideración fue presentada el 6 de septiembre de 1994, la

única carta capaz de interrumpir, <u>nuevamente</u>, el término prescriptivo, sería la misiva suscrita el 13 de septiembre de 1993. ¿Constituyó dicha carta una reclamación extrajudicial?. Si analizamos, <u>por sí sola</u>, la carta del 13 de septiembre en un vacío, podríamos concluir que la aseguradora no sabía a que se referían los demandantes. Despues de todo, si alguien nos remite una carta como esa, cuyo contenido, sin más detalles, indica que pronto el suscribiente acudirá a los tribunales, lo menos que produciría es sorpresa y desasosiego. Consideremos las siguientes interrogantes. ¿Conocían los demandados-recurridos la naturaleza o propósito de la carta del 13 de septiembre?; ¿fue esa la única comunicación entre las partes?.

Es prudente, en este momento, remitirnos a la carta del 31 de diciembre de 1992. Allí, se le describieron a la aseguradora las circunstancias en que ocurrieron los daños, el alcance de los mismos, la fecha y lugar del incidente, se imputó negligencia a Caparra Center, y se le reclamó a la aseguradora la cantidad de $8,000 en compensación por los daños sufridos. Sin lugar a dudas, los demandados-recurridos conocían exactamente la naturaleza de la acción. <u>Por eso, sería erróneo analizar la carta del 13 de septiembre en el vacío, como si hubiese sido la primera o única gestión entre las partes</u>. De hecho, de la contestación que hiciera el

ajustador de la aseguradora el 12 de agosto de 1993[5], también se desprende el conocimiento de la reclamación. Concluir que no hubo reclamación extrajudicial, y sí una carta informativa, nos transformaría en tecnócratas del derecho, dejando huérfana la justicia.

Además, sería fútil e inconsecuente requerir a quienes reclaman un derecho extrajudicialmente que, siempre que se comuniquen con el deudor, esbocen nuevamente los hechos que dieron lugar a la reclamación, el daño causado, que el deudor es el responsable de dicho daño, y la indemnización. Así, concluimos que, en casos como el de autos, una vez se ha efectuado una reclamación extrajudicial suficiente en derecho, no es necesario que cada vez que el acreedor desee interrumpir nuevamente el término prescriptivo, se repitan asuntos previamente expresados; ello siempre que se pueda concluir que de las posteriores cartas surja la intención de éste de no perder su derecho.

---

[5] En lo pertinente, la carta señaló lo siguiente:

> "Acusamos recibo de su carta fechada 5 de agosto de 1993 en donde nos envía los records médicos de la reclamante de la referencia.
>
> Como le habíamos indicado en nuestra carta fechada 7 de enero de 1993, entendemos que no medió negligencia de parte de nuestro asegurado.
>
> Ahora bien, estaríamos dispuesto y en la mejor disposición de honrarle un pago nominal y evitar un pleito innecesario."

Habiendo establecido que en efecto la aseguradora conocía la naturaleza de la acción, corresponde determinar si, de un examen sosegado de la carta del 13 de septiembre, se desprende que los demandantes-recurrentes no querían abandonar su derecho. Debemos aquí repetir que la interrupción concebida en el Código Civil "es la manifestación inequívoca de quién[sic] amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". Zambrana v. E.L.A., ante, citando a Feliciano v. A.A.A., 93 D.P.R. 655, 660 (1966); Cintrón v. E.L.A., 127 D.P.R. 582 (1990). La afirmación de la demandante-recurrente, de León Crespo, de que pronto acudirá a los tribunales, y la inercia son posturas mutuamente excluyentes. No hubo la inercia que el Código Civil pretende castigar. La voluntad de la demandante-recurrente fue patente en la carta del 13 de septiembre. La misma representa un acto afirmativo del acreedor del derecho que revela su intención de conservar y exigir el mismo.[6] Ciertamente, hay varias formas de expresar el arraigo al derecho; la aquí efectuada es una de ellas.

Díez Picazo[7] señala que:

> "[n]uestro Código civil no ha dado a la palabra 'reclamación' ningún significado preciso, ni técnico. Pero ello no nos exime de tratar de encontrarlo. Reclamación vale, en principio, tanto como exigencia o intimación. Es decir: se

---

[6]  Puig Brutau, J., ob. cit., n. 3, pág. 90.

[7] Díez Picazo, L., ob. cit., a la pág. 130, citado en Cintrón v. E.L.A., ante; Srio. del Trabajo v. Finetex Hosiery Co., 116 D.P.R. 823 (1986); y Díaz de Diana v. A.J.A.S. Insurance Company, 110 D.P.R. 471 (1980).

> trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad requiriéndole para que adopte el comportamiento debido. La reclamación es pues una pretensión en sentido técnico." (Subrayado nuestro.)

"Declarar, notificar, hacer saber una cosa, especialmente con autoridad o fuerza para ser obedecido"[8] eso es intimar. ¿Cumplió la carta cursada el 13 de septiembre con dicho criterio? Entendemos que sí. La acreedora del derecho le hizo saber al deudor que pronto instaría la acción correspondiente en los tribunales. Claro está, no es que la carta suscrita sea una ambrosía, pero al menos cumplió con los estándares mínimos en cuanto a reclamación extrajudicial se refiere. No podemos castigar con el látigo de la prescripción a quien no incurrió en desidia ni en dejadez.

A esos efectos, debemos considerar la interpretación que hicimos en Acosta Quiñones v. Matos Rodríguez, ante, donde expresamos, en cuanto a la interrupción de la prescripción por reclamación extrajudicial del acreedor, que era posible que las comunicaciones de una aseguradora constituyeran prueba circunstancial de que hubo una reclamación extrajudicial verbal por parte de los acreedores. Sin embargo, en dicho caso las cartas de la aseguradora no constituyeron prueba circunstancial de una reclamación

---

[8] *Diccionario de la Lengua Española*, Vigésima ed., T. II, Madrid, 1984, pág. 783.

extrajudicial verbal capaz de interrumpir el término prescriptivo. Por otro lado, en Zambrana Maldonado v. E.L.A., ante, este Tribunal determinó que una "notificación de reclamación", analizada en su totalidad y de forma liberal, constituyó una reclamación extrajudicial suficiente para interrumpir la prescripción.

Debemos aclarar también que los hechos y el análisis jurídico del caso de autos son distintos a los de nuestra decisión en Acosta Quiñones v. Matos Rodríguez, ante. En dicho caso examinamos las comunicaciones del deudor, mientras en el recurso ante nos analizamos la expresiones del acreedor. En otras palabras, cada uno versa sobre distintos métodos para interrumpir la prescripción; aquél trata sobre *reconocimiento de deuda* y éste sobre *reclamación extrajudicial*. Concluimos que, sin lugar a dudas, la carta del 13 de septiembre de 1993, considerada conjuntamente con la carta del 31 de diciembre de 1992, constituyó una reclamación extrajudicial que interrumpió la prescripción.[9]

IV

Aun cuando innecesaria, consideramos la postura que subyace de los planteamientos de los demandados-recurridos a los efectos de que, una vez la parte a quien se le notifica la reclamación extrajudicial niega su responsabilidad, no

---

[9] Una carta es uno de los medios tradicionalmente reconocidos para efectuar una reclamación extrajudicial. Hawayek v. A.F.F., 123 D.P.R. 526 (1989).

puede interrumpirse nuevamente el término prescriptivo a través de otra reclamación extrajudicial. Nos negamos a adoptar esa tesis. Al ponderar sobre la cantidad de veces en que se puede ejercitar el derecho de interrumpir una acción, Díez Picazo, ob. cit., pág. 95, opina que "nada se opone a que los derechos prescriptibles sean indefinidamente prolongados, sin límite alguno de tiempo, mediante sucesivas reclamaciones del titular...". Zambrana Maldonado v. E.L.A., ante. De hecho, en Díaz de Diana v. A.J.A.S. Ins. Co., ante, págs. 474-475, se reconoció que "una reiteración extrajudicial de la reclamación" interrumpe nuevamente el término prescriptivo.

V

Ahora bien, debemos analizar si la acción de la sociedad legal de gananciales, y la de Roberto Zacour, están prescritas. De un examen de las cartas enviadas a los demandados-recurridos, se desprende diáfanamente que sólo ejerció su reclamo la demandante de León Crespo. Claro está, como coadministradora de la sociedad legal de gananciales, de León Crespo podía interrumpir el término con relación a las acciones de aquélla. En específico, la única reclamación de carácter ganancial que fue interrumpida extrajudicialmente por de León Crespo fue la de gastos médicos. Sin embargo, la misma está prescrita. Sabido es que los gastos médicos constituyen gastos especiales que tienen

que ser debidamente especificados en la demanda. De un examen de la demanda presentada en el caso ante nuestra consideración, se desprende que no se reclamó, de forma específica, los gastos médicos. Por ello es que esta reclamación en particular está prescrita.

## VI

Por los fundamentos anteriormente expresados, procede expedir el auto de certiorari y dictar Sentencia modificatoria de la emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, a los efectos de revocar aquella parte de la misma que decretó la desestimación de la reclamación de la demandante-recurrente Gladys de León Crespo; devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO
RICO


Gladys de León Crespo por
sí, et al.

    Demandantes-recurrentes

       vs.                      RE-94-595       REVISION

Caparra Center, también
conocido como San Patricio
Plaza Shopping Center,
Antilles Insurance Co.

    Demandados-recurridos


SENTENCIA

San Juan, Puerto Rico, a 19 de marzo de 1999


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia modificatoria de la emitida por el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, a los efectos de revocar aquella parte de la misma que decretó la desestimación de la reclamación de la demandante-recurrente Gladys de León Crespo; devolviéndose el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Negrón García y señor Fuster Berlingeri emitieron Opiniones concurrentes. El Juez Asociado señor Corrada del Río no interviene.


                    Isabel Llompart Zeno
              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gladys de León Crespo por
sí, et al.

    Demandantes-Recurrentes

      v.                                    RE-94-595        Revisión

Caparra Center, también
conocido como San Patricio
Plaza Shopping Center,
Antilles Insurance Co.

    Demandados-Recurridos

Opinión Concurrente del Juez Asociado señor Negrón García

San Juan, Puerto Rico a 19 de marzo de 1999

I

El 31 de diciembre de 1992, la representación legal de la Sra. Gladys de León Crespo envió una carta a Antilles Ins. Co., aseguradora de Caparra Center describiendo una caída que experimentó por alegada negligencia. Reclamó $8,000.00 por daños y perjuicios y $850.00 de gastos médicos incurridos.

La aseguradora Antilles contestó negando la negligencia. Hasta el 13 de septiembre de 1993 las partes intercambiaron varias comunicaciones. Ese día, mediante carta, de León Crespo indicó a la aseguradora que instaría acción judicial. Así lo hizo el 6 de septiembre de 1994, fecha en que

junto a su esposo y la sociedad de gananciales demandó. La aseguradora solicitó y obtuvo a su favor sentencia desestimatoria por prescripción.

II

No podemos suscribir el significado limitante que en el ámbito de la doctrina de **interrupción extrajudicial** la mayoría le impone al requisito **de exigir lo debido.**

Bajo la tesis mayoritaria, la carta enviada el 31 de diciembre de 1992 cumplió con los requisitos exigidos para extrajudicialmente interrumpir el término prescriptivo, ya que iba dirigida al sujeto pasivo del derecho, expresó el daño sufrido, imputó negligencia, esbozó la relación causal y requirió a Caparra Center que adoptara un comportamiento debido. Este último requisito es traducido en **indemnizar un daño,** lo que tiene el efecto de exigir que para que una reclamación extrajudicial interrumpa, ésta tiene que contener un reclamo monetario específico.

En nuestro disentir en González Rodríguez v. Wal-Mart, res. en 9 de diciembre de 1998, estimamos esta exigencia equivocada: no debemos requerir formas donde la ley no lo exige. Lo importante es aceptar como reclamación extrajudicial aquella que "la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad, o de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago."[10]

Reiteramos ese criterio y, por ende, concurrimos en el resultado.


                              ANTONIO S. NEGRÓN GARCÍA
                              Juez Asociado

---

[10] M. Albaladejo, Comentario al Artículo 1973 del Código Civil, Revista de Derecho Privado, págs. 989 y ss. (1977).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gladys de León Crespo por sí,
Et Als.

    Demandantes-Recurrentes


       vs.                      RE-94-595       Revisión

Caparra Center, también conocido
como San Patricio Plaza Shopping
Center, Antilles Insurance Co.

    Demandados-Recurridos


Opinión Concurrente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 19 de marzo de 1999.


Para los que hemos estado abogando, desde hace tiempo, por que prevalezca en nuestro Foro una concepción de la figura de la prescripción extintiva que se ajuste a su naturaleza y sentido propio, la opinión de la mayoría en el caso de autos debe ser recibida como un paso de avance. Comienza a derrumbarse la postura patibularia que ha caracterizado el modo de decidir de una mayoría de este Tribunal en casos de reclamaciones extrajudiciales de daños contra compañías de seguro.

Según hemos expuesto antes en nuestros disensos en González Rodríguez v. Wal-Mart, sentencia del 9 de diciembre de 1998, ___ D.P.R.

___, 98 JTS 149, y en <u>Acosta Quiñonez v. Matos Rodríguez</u>, opinión del 5 de abril de 1994, 135 D.P.R. ___, 94 JTS 47, una mayoría de este Foro ha estado sujetando las reclamaciones extrajudiciales referidas a normas inflexibles de extremo formalismo, que son ajenas a la figura de la prescripción extintiva, y que han dado lugar a notables injusticias. El modo de decidir aludido le ha permitido a entidades poderosas manipular crudamente a su favor el proceso de negociación con perjudicados de muchos menos recursos, para que éstos pierdan su derecho a ser indemnizados aunque hayan mantenido viva su reclamación.

La postura mayoritaria aludida se atenúa en el caso de autos, al reconocer que una vez se ha efectuado una reclamación extrajudicial, no es necesario que el perjudicado la reitere con palabras sacramentales en otras comunicaciones posteriores, y que el término de prescripción queda interrumpido durante todo el proceso mientras el perjudicado mantenga viva la intención de no perder su derecho. Esto es indudablemente un paso de avance en la dirección correcta, que debe ser bienvenido.

Claro está, la mayoría se queda corta en su dictamen en el caso de autos. Ello, porque aún se ata la interrupción del término prescriptivo a que la reclamación extrajudicial inicial cumpla con varios requisitos rigurosamente legalistas. No se abandona el puro conceptualismo, como si en el Derecho las formas tuviesen algún valor propio superior al sentido y el propósito de la norma.

Aunque se repite mucho, no cala aún en todo su vigor la concepción de gran juricidad que citamos en <u>Zambrana Maldonado v. E.L.A.</u>, op. del 30 de enero de 1992, 129 D.P.R. ___, 92 JTS 12, de que en casos como el de autos, la reclamación judicial posee valor interruptivo **<u>en cualquier forma que sea hecha</u>**. Si no hay inactividad de parte del perjudicado, si es claro que éste no ha abandonado su derecho y que, al contrario, tiene la intención de obtener indemnización, entonces la reclamación tiene valor interruptivo aunque no estén presentes todos los elementos de naturaleza sacramental que la mayoría estima necesarios.

Es loable el interés expresado por la mayoría de no ser "tecnócratas del derecho", y de no dejar "huérfana la justicia". Pero para lograr a cabalidad esas metas que compartimos, es menester librarse por completo de la sujeción al ritual legalista, para que prevalezcan los fines y propósitos que animan y dan sentido propio a las figuras jurídicas.

Por lo anterior, no puedo estar conforme con toda la opinión mayoritaria, por lo que concurro en el resultado.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO