Clay KING, Plaintiff,

v.

**TL DALLAS & CO., LTD, et al., Defendants.**

No. CIV.00–1914 RLA.

United States District Court, D. Puerto Rico.

July 10, 2003.

Juan T. Peñagarícano, Jr., Esq., San Juan, PR, for Plaintiff.

Peter Díaz–Santiago, Esq., San Juan, PR, for Defendants.

### ORDER IN THE MATTER OF CROSS–MOTIONS FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

T.L. DALLAS & CO., LTD., ("T.L.DALLAS") and LA REUNION

FRANCAISE, S.A. ("LA REUNION"), the two remaining defendants in these proceedings [1] have moved the court to dismiss the instant complaint as time-barred. Plaintiff duly opposed the request [2] and also submitted a cross-motion for summary judgment.

The court having reviewed the arguments submitted by the parties hereby rules as follows.

## THE FACTS

The following facts duly supported by the evidence on record are not in controversy.

On or about **May 7, 1998** LA RE-UNION, in exchange for good and valuable consideration issued to plaintiff, CLAY KING ("KING"), a valued policy of marine insurance, Policy No. 200/533/20707 ("the Policy") affording hull & machinery coverage for the 1985, 38 ft. Westwind sailing vessel known as "Ilio Aukai Elua" owned by plaintiff.

The policy was issued by LA RE-UNION, a French insurance company which provides vessels with marine insurance coverage.

MIKE BARNETT ("BARNETT") was employed by BARNETT YACHT INSUR-ANCE, an underwriting agent located in San Diego, California.

T.L. DALLAS is a marine underwriting manager based in Bradford, England.

The Policy provided hull & machinery coverage in the amount of **$110,000.00**, subject to a **$5,000.00** deductible, with effective dates of coverage from **May 7, 1998** through **May 7, 1999**.

On or about **September 21, 1998**, while the policy was in full force and effect, plaintiff's vessel suffered hull & machinery damage as a result of the passage of Hurricane Georges.

On **November 16, 1998** CAPT. E.S. GEARY ("GEARY") of GEARY ASSOCI-ATES, the marine loss adjusters for T.L. DALLAS, sent a facsimile message (fax) to MARK THOMAS ("THOMAS"), of T.L. DALLAS, with his estimate of the repairs to the hull and machinery damages sustained by the vessel as covered by the policy with a suggested settlement sum. According to GEARY, the estimated covered repairs was: **$33,467.66** less a **$5,050.00** deductible for a net payable amount pursuant to the Policy of **$23,-367.66**.[3] As an alternative, he suggested "a full and final settlement" of the claim for **$26,080.90**.

On **November 24, 1998** THOMAS wrote to BARNETT acknowledging review of the "copious exchange to correspondence passing between the assured and the appointed adjuster" as well as the faxes sent to him by plaintiff herein. THOMAS requested BARNETT to "contact the assured and indicate that I am available for discussion of his claim at any time and that he should not hesitate to contact me." THOMAS further indicated that "[i]t would be helpful if at this stage the assured could itemize his damage and claim and set each item against items referred to in all repair estimates submitted to date.

---

1. *See* Partial Judgment Dismissing Barnett Yacht Insurance, Inc., issued on May 24, 2001 (docket No. 16).

2. Plaintiff further requested that defendants' summary judgment petition be rejected arguing violation of the provisions of Local Rule 311.12. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment upon the Parties' Failure to Comply with Local Rule 311.12 (docket No. 22). However, it appearing that the facts alleged by defendants are not contested and are based essentially on the same evidence submitted by plaintiff this particular request is **DENIED**.

3. Mathematical error in original document.

Upon receipt of them I will discuss each item with Geary Associates and reach a speedy determination of the claim."

On **December 22, 1998** plaintiff, KING, wrote to THOMAS enclosing correspondence which he referred to as "fruitless" between BARNETT, GEARY and plaintiff and expressing dissatisfaction with the settlement amount offered as being too low.

On **December 28, 1998** plaintiff again wrote to THOMAS making reference to a **December 22, 1998** "telecon" indicating that absent any contact from THOMAS plaintiff "must conclude [t]hat THOMAS' statement 'we can work this out' is an error." Plaintiff KING further stated "[a]fter speaking with you, even after my personal deadline for negotiations passed, I had hoped this distance between your offer of 4 November, 1998 and my stated minimum acceptable offer on 22 December, 1998 could be bridged. I intend to utilize no more of my personal time on this subject since all contact appears fruitless."

THOMAS responded via fax dated **December 29, 1998** apologizing for his failure to answer plaintiff's previous correspondence due to the office closing down from December 23 through 29 for the holidays. THOMAS acknowledged that the "vessel suffered substantial damages as a result of Hurricane Georges" as well as receipt of various estimates totaling **$62,804.43** but indicated that according to GEARY & ASSOCIATES "some of the claimed damage is specifically excluded under the terms and conditions of the policy wording" which were itemized by THOMAS. THOMAS further indicated that plaintiff had not explained how he had arrived at the $52,000.00 settlement demand nor had he provided a report from any other adjuster/surveyor supporting plaintiff's view. Lastly, THOMAS stated "[i]f you could also confirm to me what figure you would be prepared to settle and how you have

reached that figure I can assure you of a timely response."

Plaintiff responded through a letter from his then attorney, MIGUEL A. VALCOURT, dated **January 20, 1999** which complained of the insurer's intransigent position and tendered a settlement demand. The letter, in pertinent part, reads as follows:

I have been a boat owner for approximately 15 years. In fact, I have intervened professionally in many claims related to damages inflicted to vessels during Hurricane Hugo. Truthfully speaking, I have never seen such an adamantly negative attitude towards a legitimate, sensible and sound claim judiciously requested by my client.

My remarks are based on the facts of my personal inspection of the damaged vessel accompanied by a technician well versed in matters concerning vessels damaged by hurricanes. On the other hand, your opinions are based in (sic) purely subjective criteria since you did not bring with you a person with expertise who could authoritatively contest the estimates submitted by technicians consulted by my client. Lastly, my client, besides being a surveyor (marine) himself, has available opinions of at least two other surveyors that are willing to ratify the estimates on which his claim is based.

Mr. King is willing to amicably settle his claim for the sum of $52,000.00 at this moment.

THOMAS responded via fax dated **January 22, 1999** making reference to his December 29, 1998 fax to plaintiff to controvert the allegations of obstinacy. Again THOMAS indicated that he relied on GEARY's opinion for his determination but that would be willing to consider any expert evidence submitted by plaintiff to contest GEARY's opinion. THOMAS spe-

cifically stated that "Underwriters have no wish to embark upon litigation and would be delighted to negotiate with you so that this matter can be resolved quickly without further delay." Lastly, THOMAS clarified that his firm represented "Underwriters at interest in the above matter (La Reunion Francaise SA) [and were therefore,] Underwriters agents, acting at all times for a disclosed principal."

On **February 9, 1999** MR. VALCOURT responded to THOMAS' fax on plaintiff's behalf contesting the alleged insufficiency of the information previously supplied by his client as well as various exclusions raised by the insurer. MR. VALCOURT reiterated the availability of "at least two other surveyors in order to sustain my client's point of view" and strongly objected to GEARY's stance regarding the amounts to be paid to the technicians to do the repair work. According to MR. VALCOURT's letter, GEARY "wasn't able to come forth with other technicians that were willing to perform the task. Furthermore, Mr. Geary wasn't able to adjust with the technicians that rendered their respective estimates to an amount which you are willing to provide redress for the damages suffered by [the vessel] ... I may be willing to accept any other classified technician that Mr. Geary will be able to contact for the repairs needed to bring the vessel to the condition that it had (sic) prior to the hurricane." The letter also mentioned the economic duress that the insurer's position had brought upon plaintiff and indicated that the requested assessments by other surveyors would be forthcoming.

Again on **February 18, 1999** counsel VALCOURT wrote to THOMAS arguing the erroneous interpretation of the policy exclusions by the insurer and advising of GEARY's problems with other claims. Again, the fact that GEARY had not been able to locate other technicians willing to do the repairs or "adjust with the technicians that rendered their respective estimates to an amount which you are willing to provide redress" and the economic burden brought upon plaintiff were mentioned. MR. VALCOURT indicated that he was in the process of submitting a damage report prepared by another surveyor.

THOMAS responded on **February 22, 1999** once more requesting documentation in support of the $52,000.00 demand and objecting to plaintiff's interpretation of the policy exclusions. He also explained adjustments made under the Policy due to depreciation.

A survey prepared by COMPASS MARIE was forwarded to THOMAS on **August 22, 1999** by MR. VALCOURT and again the insurer was invited to consider settlement.

A meeting between counsel representing plaintiff and the insurer was held on **October 13, 1999** without success.

Absent an agreement, on **April 4, 2000** newly retained counsel for plaintiff forwarded a final settlement demand of **$85,000.00** to MENDES & MOUNT, LLP, a law firm believed to represent the insurer. Copy thereof was forwarded to THOMAS.

On **April 10, 2000** an attorney with the aforementioned law firm replied that they were not authorized to accept the type of notification sent. THOMAS received a copy.

The instant suit was filed on **July 18, 2000.**

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P. sets forth the standard for ruling on motions for summary judgment. *See, Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–61 (1st Cir. 2000). It is well settled, that in ruling on a

motion for summary judgment, the Court reviews the record in the light most favorable to movants and draws all reasonable inferences in their favor. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *See*, Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d at 841. A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir. 1995).

These same principles will guide the court in ruling on cross-motions for summary judgment. "Cross-motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Contract Clause

The only issue raised by defendants in support of their summary judgment request is the timeliness of this cause of action. Defendants contend that the policy's clause providing that suits be filed within one year from the date of the occurrence giving rise to the claim[4] constitutes

a final extinctive prescription term known as "caducidad" in Spanish which is not subject to tolling. Defendants cite *ELA v. Great Amer. Ins. Co.*, 106 D.P.R. 458 (1973); *Caribe Lumber & Trading Corp. v. Inter-American Builders*, 101 D.P.R. 458 (1973) and *Jimenez & Salellas, *Inc. v. Maryland Cas. Co.*, 1965 WL 14317, 92 D.P.R. 207 (1965) for the proposition that terms for insurance indemnification are fatal and may not be interrupted.

The cases cited by defendants are clearly distinguishable from the situation at hand. First, as correctly pointed out by plaintiff, these cases specifically deal with surety obligations where the interests at stake are quite different from those addressed in insurance contracts. See, *Caribe Lumber*, 101 D.P.R. at 465–469 explaining in detail the clear distinctions between surety and insurance obligations.

Further, we find that a term agreed upon by the parties to an insurance contract in which to institute judicial proceedings is not fatal as defendants contend. Rather, it is subject to equitable tolling.

 Insurance contracts are deemed adhesion contracts. Thus, the Puerto Rico Supreme Court has upheld the use of equitable principles, particularly the doctrines of "waiver" and "estoppel", in the application or interpretation of insurance contract provisions not dealing with the contract's scope and coverage which may not be extended. *Lopez Castro v. Atl. S. Ins. Co.*, 2003 WL 367437, 2003 TSPR 12, 2003 JTS 14 (P.R. Feb. 11, 2003). *See also, Rosario v. Atl. S. Ins. Co. of P.R.*, 95 P.R.R. 742 (1968). "Waiver" constitutes the voluntary relinquishment of a right by the insurer

---

4. In pertinent part, the Policy, at Sec. 9(u) provides:

No **suit** or action on this Policy for the recovery of any claim shall be sustainable in any court of Law or equity unless the

Assured shall have fully complied with all the requirements of this Policy, nor unless **commenced within one year from the date** of the ... occurrence out of which the claim arose .... (emphasis ours).

whereas "estoppel" results when the insured has relied on defendant's representations to his own detriment. *Lopez Castro.*

■ The conduct of an insurer and/or its agent during negotiations regarding an insured's claim may constitute waiver or estoppel of the contractual period within which to bring suit in situations where the "insurer used the limitation period to negotiate without denying the claim [or][n]egotiations continued after expiration of [the] limitation period without a final denial of a claim." Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 238.49 (3rd ed.) (footnotes omitted).

■ It is uncontested that the policy at issue in these proceedings was in effect **in September 1998** when the vessel sustained damages, that the policy has a one-year limitations clause, and that this suit commenced on **July 18, 2000,** that is, beyond the term agreed upon by the parties to the insurance contract. Thus, unless waiver and/or equitable tolling are found, a claim based on the terms of the policy is untimely.

There is ample correspondence in the record which tracks the active and continuous negotiations held between the insured and THOMAS—undisputably acting on behalf of LA REUNION—which clearly evinces that at no time did defendant raise the contractual time limitations as a bar to further consideration of plaintiff's position. On the contrary, from as early as **November 1998** up to at least the settlement meeting held in **October 1999** plaintiff was led to believe that the insurer was open to entertain plaintiff's claims undermining GEARY's methodology and the documented demands for higher indemnity sums. Further, at no time during the entire negotiations period, which lasted for over one year, did the insurer make mention, much less raise the limitations defense. As a matter of fact, the last settlement meeting

during which defendant appeared through counsel was held beyond the **September 1999,** i.e., one year deadline. Again, in **April 2000** plaintiff made one last effort to dispose of his claim to no avail. The complaint was then filed on **July 18, 2000.** The court finds that plaintiff did not incur in an inordinate delay in bringing this suit given the historical background of the claims at issue.

Thus, we conclude that based on the evidence submitted defendants are precluded from asserting the contractual time limitation to a demand for payment of claims due under the terms of the policy.

### Tort or Breach of Contract

Apart from the monies owed under the express terms of the insurance contract plaintiff seeks recovery of additional sums for damages or losses allegedly caused by the insurer's breach of contract and unreasonable denial of his claim. In order to determine whether these claims are timely we must first ascertain their nature inasmuch as the statute of limitations applicable to actions seeking damages sounding in tort is one (1) year as provided for in art. 1868 of the Civil Code, 31 P.R. Laws Ann. § 5298(2) (1990) whereas claims for damages flowing from a breach of contractual obligations is 15 years. *See, Ramos v. Orientalist Rattan Furniture, Inc.,* 130 D.P.R. 712, 717–8 (1992) (finding art. 1864, 31 P.R. Laws Ann. § 5294 applicable to breach of contract claims) and *Rosario Quiñones v. Municipality of Ponce,* 92 P.R.R. 571, 578 (1965) ("actions for damages caused through the breach or nonperformance of a contract prescribe after 15 years.")

■ We must begin by examining the nature of defendant's obligations vis à vis plaintiff's to determine whether the underlying facts point to a tort or a breach of contract claim. *Ocasio Juarbe v. E. Air Lines, Inc.,* 1990 WL 657498, 125 D.P.R.

410, 416–8 (1990). Specifically, the court must inquire whether defendants' conduct breached an obligation imposed by contract or law or if it instead violated a general principle of conduct which permeates all relationships, i.e., to act in good faith. See, I Herminio M. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, pp. 42–3 (2d ed.1986); José A. Cuevas Segarra, La Responsabilidad Civil y el Daño Extracontractual en Puerto Rico, pp. 179–181 (1993). In other words, whether it is an *ex delicto* (tort) or *ex contractus* (contract) claim. *Ramos,* 130 D.P.R. at 720. *See also, Rosario Quiñones,* 92 P.R.R. at 575.

All acts or omissions which result in injuries arise from two categories of conduct, i.e., (1) the failure to abide by a pact or (2) an activity separate from any previous legal relationship between the wrongdoer and the victim. Ricardo de Angel Yagüez, La Responsabilidad Civil, p. 21 (1988). In the first instance, the duty to indemnify arises from another duty, the duty to comply with obligations engendered by a contract which has been infringed upon, that is, a contractual responsibility. *Id.* at 22. In the second scenario, the obligation to indemnify arises by the mere fact of having caused damages because the wrongdoer has infringed upon the general norms of respect towards others imposed by society, i.e., civil responsibility. *Id.*

In contract infringement cases a previously existing relationship between the parties is present whereas in tort liability situations, plaintiff's right accrues at the time of the injury. Jaime Santos–Briz, Derecho de Daños, pp. 13–14 (1963). The duty to indemnify in a tort case arises from a negligent act or omission whereas claims for damages flowing from the failure to abide by the terms of an agreement assume a prior relationship between the parties. Art. 1802 liability is not based on the failure to comply with duties assumed by the parties but rather by duties imposed by the need for social order. *Ramos,* 130 D.P.R. at 721–22.

Hence, different limitations periods will apply to a bad faith insurance denial claim depending on whether it is deemed a tort or an action for damages resulting from a breach of contract. This matter has yet to be decided by the Puerto Rico Supreme Court. See, *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 41 n. 3 ("the question of whether a bad faith denial of an insurance claim is an issue of contract or tort is a matter of state law that has not yet been addressed by the courts of Puerto Rico.")

In *Noble v. Corporacion Insular de Seguros,* 738 F.2d 51, 53 (1st Cir.1984) the court acknowledged the availability of a separate action for wrongful refusal to pay a policy claim and upheld the insurer's liability for ensuing damages but stayed clear of making this determination. The court noted that liability for additional damages for breach of contract emanates from provisions of the Puerto Rico Civil Code which require good faith in the performance of a contract and impose liability for breach of contractual obligations. Art. 1210, 31 P.R. Laws Ann. § 3375 provides that parties to a contract bind themselves "not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use and law." Further, pursuant to art. 1054, 31 P.R. Laws Ann. § 3018, a party found to have incurred in "fraud, negligence, or delay" or having acted contrary to its contractual obligations shall be liable "for the losses and damages caused thereby." However, the court also acknowledged that there was sufficient evidence of fault in the defendant's refusal to pay repair costs to

meet the requirements of an action in tort pursuant to art. 1802, 31 P.R. Laws Ann. § 5141 thereby sidestepping this question.

In *The Radiology Inst. & Imaging Ctr., Inc. v. N. Am. Philips Corp.*, the court, relying on the aforementioned arts. 1210 and 1054 of the Civil Code, found that an action to recover damages allegedly sustained in connection with the purchase of certain equipment based on misrepresentations regarding the technological viability of the machine was one for breach of contract, not tort because it was based on a pre-existing contractual relationship. Hence, it applied the 15–year limitation period to the claim.

In *Event Producers, Inc. v. Tyser & Co. N. Am., Inc.*, 854 F.Supp. 35 (D.P.R.1993), aff'd 37 F.3d 1484 (1st Cir.1994) an action brought by the insureds alleging bad faith in the denial of their claim the court utilized the principle of bad faith in the performance of a contract as a standard for liability. The applicable criterion was described as conduct on the part of the defendant which denoted "either conscious wrongdoing, reckless indifference or the lack of a reasonable basis for denying a claim." *Id.* at 39. The court placed particular "emphasis on the wilful nature of the insurer's failure to pay on the claim". *Id.* The reasonableness of the defendant's actions were examined in relation to the duties imposed by the Puerto Rico Insurance Code, 26 P.R. Laws Ann. §§ 2716a and 2716b to duly investigate claims. The court, however, found in favor of the defendants concluding that their "behavior was appropriate and reasonable under the circumstances, and not at all reckless." *Id.* at 40.

Consonant with this line of reasoning, we conclude that the conduct charged by plaintiff in his claims for breach of contract and bad faith denial of his insurance claim must fall within the contractual ambit since any liability arising therefrom is premised on pre-existing contractual obligations. Inasmuch as these claims were filed within the 15 year term they were therefore timely filed.

## Tort

Even if we were to find plaintiff's damages as one sounding in tort, the nature of the correspondence sent to the defendant prior to expiration of the limitations period clearly operated as a toll.

■ As previously noted, the applicable period for instituting actions sounding in tort is one year as provided for in P.R. Laws Ann. tit. 31, § 5298 (1990). This term may be tolled either via: (1) judicial proceedings, (2) extra-judicial claims, and (3) acknowledgment of the debt by the person liable for the damages. P.R. Laws Ann. tit. 31, § 5303 (1990). Once tolled, the full one-year period commences anew. *Sánchez v. Autoridad de los Puertos*, 2001 JTS 34, *de Leon Crespo v. Caparra Ctr.*, 1999 WL 202674, 147 D.P.R. 797, 802–3 (1999); *Olmo v. Young & Rubicam*, 110 D.P.R. 740 (1981); *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 43 (1st Cir.1990).

■ It is undisputed that the complaint in this case was filed beyond the aforementioned one year provided by law. However, it would still be timely if effectively tolled through plaintiff's demands to the insurer. In order to be effective the demand need not comply with any formal requirement. However, it must convey an unequivocal desire by an injured party not to lose a right when threatened to lose it. *Acosta Quinones v. Rodriguez*, 1994 WL 909614, 135 D.P.R. 668, 675 (1994); *Zambrana Maldonado v. E.L.A.*, 1992 WL 755000, 129 D.P.R. 740, 752 (1992). The demand must be made by the injured party or his representative to the person responsible for the damages, prior to the lapse of the statutory period, and must relate to the same claim alleged in the

complaint. *de Leon Crespo,* 1999 WL 202674, 147 D.P.R. at 805; *Gonzalez v. Wal–Mart, Inc.,* 1998 WL 876530, 147 D.P.R. 215, 219–220 (1998). That is, "it must require or demand the **same conduct or relief** ultimately sought in the subsequent lawsuit." *Tokyo Marine & Fire Ins. Co., Ltd. v. Perez & Cia.,* 142 F.3d 1, 5 (1998) (citing *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 44 (1st Cir.1990)) (emphasis ours).

Plaintiff's continued efforts seeking payment from the insurer meet the aforementioned criteria for extra judicial claims. The demands were addressed to a party representing the insurer's interests, within the limitations period and procuring payment of monies due both under the policy terms as well as ensuing economic damages. Thus, even assuming plaintiff's claims sound in tort they would still be timely.

## PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

In addition to opposing defendants' motion for summary judgment on timeliness grounds plaintiff argues that the only dispute left in this action is the amount due plaintiff.

■ Defendants having failed to present evidence to the contrary, we agree with plaintiff that no issue remains in these proceedings regarding (1) the validity of the policy, (2) the fact that it was in full force and effect when the vessel was damaged, and that (3) the damages to the vessel claimed by plaintiff resulted from the passing of Hurricane Georges. However, plaintiff must still prove he is entitled to the relief petitioned in the complaint because the survival of a bad faith claim will depend on the soundness of the reasons or justification proffered by the insur-

er for its decision. A trial regarding liability in the breach of contract/bad faith claims is still warranted because, based on the record before us, the court is unable to ascertain whether the insurer's assessment of the covered items and the amounts allotted for these were adequate. In order to prevail in the breach of contract/bad faith claims plaintiff must introduce evidence at trial of factors such as "the sufficiency or strength of [LA REUNION's] reasoning", whether its denial of specific claims and/or amounts was intentional or if the insurer had a "reasonably legitimate or arguable reason" for its determination. 14 Couch on Insurance § 204.28

Accordingly, the court cannot enter a liability finding on plaintiff's behalf regarding the bad faith/breach of contract claims.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by defendants on timeliness grounds (docket No. 20)[5] is **DENIED**.

It is further ORDERED that Plaintiff's Cross–Motion for Summary Judgment (docket No. **23**) is **GRANTED** but limited to the validity of the policy, the fact that it was in full force and effect when the vessel was damaged, and that the damages claimed by plaintiff resulted from the passing of Hurricane Georges. However, plaintiff's request for a liability determination is **DENIED**.

IT IS SO ORDERED.

---

**5.** *See,* Plaintiff's Opposition... (docket No. **22**) and Defendants' Memorandum of Law in

Reply... (docket No. **26**).