Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SAN JOSÉ DEVELOPMENT, INC.<br><br>Apelante<br><br>v.<br><br>LA SUCESIÓN DE LA SRA. MARÍA DEL CARMEN MAGRANER FOLCH COMPUESTA POR SUS HEREDEROS MAX M. OLIVERA MAGRANER; GABRIEL A. OLIVERA MAGRANER; MARGARITA OLIVERA MAGRANER; FRANCISCO OLIVERA MAGRANER; JAIME L. OLIVERA MAGRANER; CARLOS OLIVERA MAGRANER; Y MARÍA DEL CARMEN OLIVERA MAGRANER, POR SÍ Y COMO SUCESORA DE DON MAX OLIVERA MARIANI<br><br>Apelados | KLAN202300598 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Civil Núm.: SJ2021CV02181 (Sala 703)<br><br>Sobre:<br><br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2023.

Comparece la parte apelante, San José Development, Inc. (en adelante, SJD) y solicita nuestra intervención para revisar la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI), el 24 de mayo de 2023, notificada al día siguiente.[1] Mediante este dictamen, el TPI declaró con lugar la *Moción Solicitando Desestimación y/o Sentencia Sumaria* instada el 17 de enero de 2023 por la parte apelada. En consecuencia, desestimó con perjuicio la *Demanda* del compareciente bajo el fundamento de prescripción.

---

[1] Apéndice de la *Apelación*, págs. 478-479; y 480-489.

Número Identificador

SEN2023_____

Por los fundamentos que expondremos, revocamos la determinación judicial impugnada.

**I**

La presente causa se inició el 8 de abril de 2021, ocasión en que SJD instó *Demanda* sobre cobro de dinero por concepto de cánones de arrendamiento impagos, más intereses y penalidades contra la parte apelada del epígrafe.[2] Luego de un sinnúmero de procedimientos interlocutorios los cuales no son necesarios pormenorizar, el 18 de abril de 2022 SJD incoó *Segunda Demanda Enmendada*.[3] En síntesis, alegó que la sucesión de María del Carmen Magraner Folch, —viuda de Max Olivera Mariani— conformada por los hermanos Max, Gabriel, Jaime, Margarita, Francisco, Carlos y María, todos con apellidos Olivera Magraner, respondía por una deuda ascendente a $2,809,816.37 cuya cantidad aumentaba mensualmente a razón de $34,864.45.

Surge del expediente que, en 1992, Don Max Olivera Mariani suscribió un contrato de arrendamiento quinquenal para establecer su oficina de abogado en el local 1411, sito en el edificio MCS Plaza. El acuerdo fue renovado en tres ocasiones sucesivas. No obstante, la última renovación del contrato —desde el 28 de marzo de 2007 al 31 de marzo de 2012— fue suscrita por su hijo Gabriel.[4] Don Max Olivera Mariani falleció el 21 de junio de 2013, pero aun así la oficina continuó ocupada hasta el 1 de julio de 2015, cuando se entregaron las llaves.[5]

En lo que nos compete, el contrato incluyó un canon de arrendamiento con incrementos anuales.[6] Estos serían cobrados

---

[2] Apéndice de la *Apelación*, págs. 1-6. Con relación a la reclamación inicial, refiérase a las págs. 7-31; 32-35; 35-38; 39-40; 41-43; 44-76; 77-78; 79-81; y 88. Posteriormente, SJD instó *Demanda Enmendada*; Apéndice de la *Apelación*, págs. 82-87; 89-93; y 95-101.

[3] Apéndice de la *Apelación*, págs. 102-108, con anejos a las págs. 109-139 *Lease Agreement* y a la pág. 140 *Estado de Cuenta*.

[4] Apéndice de la *Apelación*, pág. 132.

[5] Apéndice de la *Apelación*, pág. 470.

[6] Apéndice de la *Apelación*, pág. 112; *Fundamental Lease Provision* (FLP).

mediante la presentación de una factura o un estado de cuenta (*invoice or statement of account*).[7] La factura sería entregada indistintamente a la mano o por correo a la dirección del local y una copia vía fax.[8] Comprendía, además, una cláusula penal en caso de

---

[7] Apéndice de la *Apelación*, págs. 114-115.

*THREE. Base Rent*:

(c) *Adjustments Generally*: The RENT above stipulated shall be adjusted, unless sooner determinable, upon expiration of the first LEASE YEAR, as hereinafter defined, and as of July first (1st) of each LEASE YEAR thereafter, which date shall be hereinafter referred to as the ADJUSTMENT DATE, by adding or crediting to the FULL RENT an amount equal to the ADDITIONAL RENT for any increase or decrease in operating expenses stipulated for in Article FOUR below, as of the end of the prior LEASE YEAR. The ADDITIONAL RENT adjustment, shall be fixed by LANDLORD as provided for in Article FOUR below as of the end of each LEASE YEAR (June 30) on the basis of LANDLORD'S accounting records as audited by LANDLORD'S independent certified public accountants which records shall be kept in accordance with generally accepted accounting standards and principles. TENANT shall be notified promptly of this determination upon the audited statements becoming available, unless sooner determinable due to the nature of the increase. The ADDITIONAL RENT shall be due and payable or credited as the case may be, upon presentation by LANDLORD to TENANT of the corresponding invoice or statement of account for any increase or reduction during the expired prior LEASE YEAR which had not been provided for in the MONTHLY RENTAL PAYMENT thereof. Payments shall also be made for the prorated monthly increases or reductions for ADDITIONAL RENT called for during the expired months of the then current LEASE YEAR so that any arrears of the ADDITIONAL RENT may be made current. TENANT shall pay or be credited for the pro-rated increases or decreases in the ADDITIONAL RENT for only that portion of the LEASE YEAR in which TENANT occupies the PREMISES and/or the TERM of this lease is in effect.

(d) *Payment Mechanism for Additional Rent*: On the due date of the MONTHLY RENTAL PAYMENT next following the furnishing of an invoice or statement of account for ADDITIONAL RENT due for a prior LEASE YEAR, the TENANT shall pay the LANDLORD in the event of an increase, (1) any unpaid amount due for any increase in the ADDITIONAL RENT not provided for the MONTHLY RENTAL PAYMENT for the prior LEASE YEAR, (2) a sum equal to one-twelfth of the TENANT'S share of such increase multiplied by the number of months then elapsed (after July 1st) of the then current LEASE YEAR; thereinafter, (3) one-twelfth of such share shall be added to the MONTHLY RENTAL PAYMENT and shall thereafter be payable as a preliminary FULL RENT for the balance of the then current LEASE YEAR. In the case of a decrease in the ADDITIONAL RENT, the TENANT shall be entitled (1) to credit against the MONTHLY RENTAL PAYMENT a sum equal to one-twelfth of the TENANT'S share of such decrease multiplied by the number of months then elapsed commencing (after July 1st) of the then current LEASE YEAR, (2) to credit any decrease due for ADDITIONAL RENT by reason of having provided for same in excess in the MONTHLY RENTAL PAYMENT; and (3) thereafter, until the next ADDITIONAL RENT invoice or statement of account shall be rendered, the MONTHLY RENTAL PAYMENT under this Lease shall be decreased, by an amount equal to one-twelfth of the TENANT'S share of such decrease in the ADDITIONAL RENT. The LANDLORD may, at his discretion, make a reasonable estimate of the TENANT'S share of anticipated increases for the ADDITIONAL RENT in the first LEASE YEAR and require the TENANT to pay each month during the first LEASE YEAR one-twelfth of such estimated amount at the time of payment of monthly installments of RENT, subject to adjustment as herein provided. [...]

(f) *Dispute Procedures*: The TENANT may dispute any specific item or items included in the ADDITIONAL RENT, by notifying LANDLORD in writing not later thirty (30) calendar days (legal holidays included) after the date of the invoice or statement of account rendered by LANDLORD and if such dispute is not amicably settled between the LANDLORD and the TENANT within thirty (30) calendar days (legal holidays and weekends included) after proper notice of the dispute has been given by TENANT, then and in that event either party may refer such disputed item or items to a different reputable independent certified public accountant authorized to practice in Puerto Rico, selected by the LANDLORD, for decision, and the decision of such accountant shall be final, conclusive and binding upon the LANDLORD and the TENANT. [...]

[8] Apéndice de la *Apelación*, pág. 130.

*TWENTY-NINE. NOTICES*:

Any invoice, statement of account or notice to, or demand on, the TENANT shall be deemed given when hand delivered at the PREMISES or to the TENANT or when mailed by certified or registered mail, return receipt requested, addressed to the TENANT at the address of the PREMISES or such other postal address as the TENANT may from time to time designate by notice in writing to LANDLORD. [...]

que el inquilino permaneciera en el inmueble después de finalizado el contrato;[9] así como el cobro de intereses por atrasos.[10] De igual forma, el contrato pactaba la solidaridad si había más de un signatario.[11]

Los hermanos Olivera Magraner presentaron una trilogía de alegaciones responsivas, todas intituladas *Contestación a Segunda*

---

[9] Apéndice de la *Apelación*, pág. 131.

*THIRTY-THREE. Lease Termination and Holding Over*:

(b) In the event TENANT remains in possession of the demised PREMISES, with or without the verbal or non-written consent of the LANDLORD, executed by a duly authorized officer, or any prior notice or demand of LANDLORD, after the expiration or earlier termination of this lease, any unlawful detainer or any holdover tenancy without the execution of a new written lease or written amendment or extension of this lease, it shall not be deemed to extend or renew the TERM of this lease but TENANT shall be deemed to be occupying said PREMISES as a TENANT from month to month at a rental equal to the FULL RENT (including any percentage rental) herein provided as of the EXPIRATION DATE or earlier termination of this lease, plus 50% of such amount and otherwise subject to all the terms, conditions, provision, and obligations of this lease unless the LANDLORD and TENANT shall otherwise specifically agree in writing. [...]

[10] Apéndice de la *Apelación*, págs. 115-116.

*THREE. Base Rent*:

(g) *Late Payments and Payments by the Landlord*: In the event that: (i) TENANT makes late payment, or fails to make payment to LANDLORD, in whole or in part, of the MONTHLY RENTAL PAYMENT, the RENT, the FULL RENT or the ADDITIONAL RENT, or any of the other payments of money required to be paid by TENANT to LANDLORD, as stipulated in this lease, when and as due and payable; or if (ii) LANDLORD, without assuming any obligation to do so, performs or causes to be performed, at the cost and expense of TENANT, any of the acts or things agreed to be performed by TENANT, as stipulated in this lease, and TENANT fails to refund LANDLORD, upon demand, any amounts of money paid or incurred by LANDLORD in performing or causing the performance of such acts or things, when and as due and payable, TENANT undertakes and agrees to reimburse LANDLORD for its additional administrative and other expenses and to pay LANDLORD interest on such lately paid or unpaid RENT, FULL RENT, ADDITIONAL RENT or MONTHLY RENTAL PAYMENT and/or on such other payments of money required to be paid, and/or on any such amounts of money required to be refunded, from and after the date when payment thereof matured or became due and payable, until full payment, at the aggregate rate of 1.5% per month, or if such portion of the payment as may be considered interest be determined unlawful by the final decree of a court of competent jurisdiction, then and in such event, at the highest maximum prevailing rate of interest on commercial unsecured loans as fixed by the Board for Regulatory Rates of Interest and Financial Charges, created under Law #1, approved October 15, 1973, (10 LPRA 998), as amended, or by any successor statute or regulation thereof.

[11] Apéndice de la *Apelación*, pág. 131.

*THIRTY-FOUR. MISCELLANEOUS - ADDITIONAL SIGNATORIES, BROKERS, AND DELIVERY OF INSTRUMENT*:

(a) More than one person as TENANT - In the event that two or more individuals, corporations, partnerships, or other business associations (or any combination of two or more thereof) shall sign this Lease as Tenants or Guarantors, the liability of each such individual, corporation, partnership or other business association to pay rent and perform all other obligations hereunder shall be deemed to be joint and several. In like manner in the event that the TENANT named in this Lease shall be a partnership or other business association, the members of which are, by virtue of statute or general law, subject to personal liability, then and in that event, the liability of each such member shall be deemed to be joint and several. Furthermore, if, as required by the provisions of this lease, LANDLORD elects or is required to give notice of any default to TENANT, notice to any one of the parties who constitute TENANT shall be deemed as notice to all parties. Likewise, if Landlord files any kind of the legal action related to this lease against tenant, service of process of such action on any one of the persons who constitute TENANT shall be considered as service on all such persons. LANDLORD may elect to prosecute or file any kind of legal action(s) related to this Lease against one or any of the signatures joint and several obligors and modify, settle, compromise or release obligations of any one or more of said obligors without releasing or otherwise impairing or affecting the obligations of all or any of the other parties obligated under this Lease.

*Demanda Enmendada.* En síntesis, negaron la cuantía reclamada por ausencia de conocimiento personal,[12] porque la cuantía, de adeudarse, estaba en controversia[13] y por falta de información y creencia en general.[14] En conjunto, los hermanos Olivera Magraner presentaron varias defensas afirmativas de las que, por su relevancia, particularizamos las siguientes: prescripción, falta de parte indispensable, novación, pago, compensación, transacción, condonación, intereses usurarios, contrato con cláusulas penales leoninas que requieren su modificación o supresión y la iliquidez de la alegada acreencia. Con respecto al carácter hereditario de la parte apelada, se aclaró que SJD no había solicitado la interpelación de los herederos y que estos heredarían a beneficio de inventario.[15]

Así las cosas, el 17 de enero de 2023, el Sr. Jaime Olivera Magraner presentó *Moción Solicitando Desestimación y/o Sentencia Sumaria.*[16] Mediante dicha moción peticionó la desestimación de la causa de acción por falta de parte indispensable y prescripción. En específico, sostuvo que el albacea y el contador partidor del caudal relicto de la causante, su hermano Max Olivera Magraner y José Barletta Rodríguez, respectivamente, eran partes indispensables que no habían sido unidas al pleito en tal carácter. Fundamentó su contención en el Artículo 1740 del Código Civil de 2020, 31 LPRA sec. 11512.[17] Además, indicó que la oficina 1411 se entregó el 1 de julio de 2015, por lo que SJD no interrumpió oportunamente el término prescriptivo de cinco años contemplado en el Artículo 1866

---

[12] Apéndice de la *Apelación*, págs. 141-145, *Contestación a Segunda Demanda Enmendada* (Jaime).
[13] Apéndice de la *Apelación*, págs. 146-149, *Contestación a Segunda Demanda Enmendada* (María).
[14] Apéndice de la *Apelación*, págs. 150-156, *Contestación a Segunda Demanda Enmendada* (Gabriel, Max, Margarita, Francisco y Carlos).
[15] María del Carmen Magraner Folch falleció el 8 de marzo de 2022.
[16] Apéndice de la *Apelación*, págs. 157-176, a la cual anejó una *Declaración Jurada*, a la pág. 177; **Exhibit 1** Testamento de doña María del Carmen Magraner Folch, a las págs. 178-198; **Exhibit 2** correo electrónico de 27 de abril de 2022, a las págs. 199-200; **Exhibit 3** carta fechada el 5 de enero de 2021, a las págs. 201-202.
[17] La aludida disposición describe las facultades legales del albacea, entre estas la de "intervenir en los litigios o incidentes que se susciten sobre los bienes hereditarios". 31 LPRA sec. 11512 (c).

del Código Civil de 1930, 31 LPRA sec. 5296, vigente a la fecha de contratación.

Al día siguiente, cuatro de los hermanos Olivera Magraner, en específico Gabriel, Max, Margarita y Carlos, se unieron a la solicitud.[18] Por igual, la Sra. María Olivera Magraner adoptó por referencia la totalidad del escrito judicial dispositivo.[19]

En respuesta, SJD presentó *Oposición a Desestimación y para que se dicte Sentencia Sumaria a favor de Demandante*.[20] SJD rechazó la indispensabilidad del albacea y el contador partidor de su causa de acción. Expuso que la sucesión no había evidenciado que, en efecto, hubiera un albacea en funciones. Apuntó que de todas formas el Sr. Max Olivera Magraner había comparecido al litigio. De otro lado, SJD enfatizó que realizó múltiples gestiones de cobro que interrumpieron el plazo prescriptivo. Al respecto, como parte de la exposición de hechos incontrovertidos, consignó los siguientes enunciados, a los que hemos impartido énfasis:

> […]
> 17. **La última renovación ocurrió el 28 de marzo de 2007** cuando se firmó el *Lease Agreement of Max Olivera Mariani Law Offices* (el "Contrato").

---

[18] Véase, *Moción Asumiendo Representación Legal y Solicitando la Desestimación de la Segunda Demanda Enmendada*, Apéndice de la *Apelación*, págs. 203-205.

[19] Refiérase, *Moción Adoptando por Referencia y en su Totalidad Escrito de Desestimación y/o Sentencia Sumaria*, Apéndice de la *Apelación*, pág. 206.

[20] Apéndice de la *Apelación*, págs. 223-254, a la cual anejó una *Declaración Jurada Luis R. Peña Montañez*, a las págs. 255-262; **Anejo A**: **Exhibit 1** *Certificado de Cumplimiento* de San José Development, Inc., a la pág. 264; **Exhibit 2** *Lease Agreement*, a las págs. 266-296; **Exhibit 3** carta de 27 de marzo de 2012, a la pág. 298; **Exhibit 4** factura y desglose de cuenta entregado a la mano el 3 de junio de 2015, a las págs. 300-304; **Exhibit 5** factura y desglose de cuenta entregado a la mano el 13 de junio de 2015, a las págs. 305-308; **Exhibit 6** correo electrónico de 19 de enero de 2016 unido a factura y desglose de cuenta, a las págs. 310, 317-320; **Exhibit 7** carta de 19 de enero de 2016, a la pág. 322; 323-326; **Exhibit 8** correo electrónico de 6 de septiembre de 2019 unido a desglose de cuenta, a las págs. 328; 329-332; **Exhibit 9** correo electrónico de 3 de octubre de 2019 unido a desglose de cuenta, a las págs. 334; 335-338; **Exhibit 10** correo electrónico de 4 de marzo de 2020 unido a desglose de cuenta, a las págs. 340; 341-345; **Exhibit 11** correo electrónico de 12 de noviembre de 2020 unido a desglose de cuenta, a las págs. 346; 347-350; **Exhibit 12** correo electrónico de 1 de diciembre de 2020 unido a desglose de cuenta, a las págs. 352; 353-356; **Exhibit 13** correo electrónico de 4 de enero de 2021 unido a desglose de cuenta, a las págs. 358; 359-362; **Exhibit 14** correo electrónico de 1 de febrero de 2021 unido a desglose de cuenta, a las págs. 364; 365-369; **Exhibit 15** correo electrónico de 1 de marzo de 2021 unido a desglose de cuenta, a las págs. 370; 371-374; **Exhibit 16** carta de 5 de enero de 2021, a las págs. 376-377; **Exhibit 17** desglose de cuenta, a las págs. 379-383; y el **Anejo B**: Testamento de doña María del Carmen Magraner Folch, a las págs. 384-404.

18. **En el Contrato compareció el Lcdo. Gabriel A. Olivera Magraner** a nombre y en representación [de] Max Olivera Mariani h/n/c *Max Olivera Mariani Law Offices.*

19. La Cláusula 2(a)(i) del Contrato estableció el término del arrendamiento a 60 meses, que **vencía el 31 de marzo de 2012**.

[…]

31. **La Oficina 1411 continuó siendo ocupada** por los miembros de la Sucesión de Don Max Olivera Mariani **hasta el 1 de julio de 2015**. En esa fecha desocuparon la oficina y entregaron las llaves a SJD.

[…]

35. El *Statement of Account* hasta el 1 de junio de 2015 se entregó a la mano en la Oficina 1411 el 3 de junio de 2015.

36. El *Statement of Account* al 1 de junio de 2015, con membrete de San José Development Inc., dirigido a Max Olivera Mariani Office específicamente dice en su parte de abajo: "New Balance Due $833,485.15" y está acompañado de tres hojas con un desglose de los cargos y créditos en orden cronológico desde el 1 de diciembre de 2010 hasta la fecha del estado.

37. Este *Statement of Account* fue corregido para eliminar el cargo por dos mensualidades de un estacionamiento que había sido entregado dos meses antes y por consiguiente no procedía. El señor Peña Montañez corrigió el *Statement of Account* y le **entregó a la mano la versión corregida el 13 de junio de 2015**.

[…]

40. El 19 de enero de 2016, el señor Peña Montañez le **envió por correo electrónico al Lcdo. Gabriel A. Olivera Magraner** el *Statement of Account* al 31 de diciembre de 2015.

41. Ese mismo 19 de enero de 2016, el Lcdo. Luis E. Dubón Arraiza, Abogado General de SJD, le **notificó a la Lcda. Carmen V. López Villafañe, representante legal de la Sucesión Max Olivera Mariani**, el *Statement of Account* del 31 de diciembre de 2015.

[…]

43. Y SJD utiliza el correo electrónico como método de comunicación para hacer gestiones de cobro para con sus inquilinos.

44. El señor Peña Montañez le **envió por correo electrónico al Lcdo. Max Olivera Magraner y al Lcdo. Gabriel A. Olivera Magraner** sendos Estados de Cuentas que él actualizó periódicamente:

a. El 6 de septiembre de 2019, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 31 de agosto de 2019 con un balance de $1,775,855.94.

b. El 3 de octubre de 2019, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 30 de septiembre de 2019 con un balance de $1,802,139.02.

c. El 4 de marzo de 2020, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 29 de febrero de 2020 con un balance de $1,941,336.20.

d. El 12 de noviembre de 2020, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 31 de octubre de 2020 con un balance de $2,188,671.87.

e. El 1 de diciembre de 2020, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 30 de noviembre de 2020 con un balance de $2,221,052.22.

f. El 4 de enero de 2021, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 31 de diciembre de 2020 con un balance de $2,255,006.94.

g. El 1 de febrero de 2021, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 31 de enero de 2021 con un balance de $2,289,480.74.

h. El 1 de marzo de 2021, el [Estado] de Cuentas con el "Aged Delinquencies" actualizado al 28 de febrero de 2021 con un balance de $2,321,094.40.

45. Por su parte, el 5 de enero de 2021, de la autoría del Lcdo. Jaime Sifre Rodríguez (QDEP), representante legal de SJD, **se envió por correo electrónico una carta para cobrar el balance de $2,255,006.71 a los miembros de la sucesión de Don Max Olivera Mariani**.

[…]

Seis de los hermanos Olivera Magraner[21] instaron sendas mociones en oposición. El 29 de marzo de 2023, Gabriel, Max, Margarita y Carlos, en conjunto, presentaron *Moción en Oposición a Moción de Sentencia Sumaria*.[22] Insistieron en que no hubo interrupción y que faltaban partes indispensables. Además, estos rechazaron el dictamen sumario por la existencia de controversias sustanciales. Expusieron que se reclamaban intereses prohibidos

---

[21] El Sr. Francisco Olivera Magraner no compareció con su oposición.
[22] Apéndice de la *Apelación*, págs. 407-430, a la cual anejó **Exhibit 1** *Declaración Jurada en Apoyo a Moción en Oposición a Moción de Sentencia Sumaria*, a las págs. 431-433; **Exhibit 2** correo electrónico de 9 de noviembre de 2011, a las págs. 434-438.

por ley, así como que la totalidad o parte de la deuda se extinguió por compensación. Adujeron también que Don Manuel Dubón de SJD le expresó al Sr. Gabriel Olivera Magraner que, "[e]n cuanto [a] la renta que est[á] *payable*[,] quedamos que no vas a desembolsar renta de la oficina del piso 14 hasta junio 30, 2012 y que vamos a aplicar esos balances y los *payables* existente[s] para rebajar el *payable* de ustedes en [Carolina]".[23] Añadieron que el acuerdo contractual fue objeto de novación. En un escrito separado, indicaron que las direcciones, según consignadas en el pedimento sumario, estaban incorrectas, pero no especificaron cuáles.[24]

A su vez, el 23 de marzo de 2023 el Sr. Jaime Olivera Magraner incoó *Oposición a Moción de Sentencia Sumaria,* en la que insertó un *Juramento.*[25] En este, aseveró que Don Max Olivera Mariani, su padre, quien practicaba la abogacía como *solo practitioner* no suscribió la renovación del contrato en 2007 porque se encontraba delicado de salud. En apoyo a los argumentos de sus hermanos, reiteró las expresiones de condonación de Don Manuel Dubón e incluyó copia de la comunicación. Apostilló que las familias Dubón y Olivera conducían negocios en común como *General Partnership* y que, desde finales de 2010, no se realizaron pagos de alquiler por la oficina 1411, debido a los créditos existentes a favor del Grupo Olivera de parte del Grupo Dubón.

Finalmente, el 19 de abril de 2023 la Sra. María Olivera Magraner compareció mediante *Escrito Uniéndonos a "Moción en Oposición a Moción de Sentencia Sumaria" presentada el 29 de marzo de 2023.*[26] Allí expresó que el escrito citado en el título vindicaba su postura. A su vez, negó haber recibido ninguna carta de cobro de la

---

[23] Apéndice de la *Apelación,* pág. 435.
[24] Véase, Apéndice de la *Apelación,* págs. 471-472.
[25] Apéndice de la *Apelación,* págs. 439-463, con los siguientes anejos: **Exhibit 1** correos electrónicos de 7 y 9 de noviembre de 2011 y 21 de mayo de 2014, a las págs. 464-467; **Exhibit 2** carta de 20 de septiembre de 2012 y el *Memo to File* sobre la entrega de la oficina 1411 el 1 de julio de 2015, a las págs. 468-470.
[26] Apéndice de la *Apelación,* págs. 475-476 y *Declaración Jurada,* a la pág. 477.

deuda.

Justipreciadas las posturas, al palio de la Regla 10.2 de Procedimiento Civil, *infra*, el TPI dictó la *Sentencia* apelada.[27] Concluyó que SJD no demostró haber interrumpido el periodo prescriptivo, toda vez que no existía prueba de que las cartas de 19 de enero de 2016 y 5 de enero de 2021 fueron enviadas. En cuanto a los correos electrónicos coligió que estos eran meros recordatorios de que había unos estados de cuenta.

No conteste, SJD solicitó oportunamente la revisión del dictamen mediante una *Moción de Reconsideración*.[28] El TPI notificó su denegación a variar su dictamen el 9 de junio de 2023.[29]

Aun inconforme, el 10 de julio de 2023 SJD acudió ante nos mediante el recurso que nos ocupa y señaló la comisión de los siguientes errores:

> **Primer Error:** Erró el TPI al resolver que SJD no logró interrumpir extrajudicialmente el término prescriptivo al determinar que el envío de los estados de cuenta por correo electrónico no resultan ser una manifestación inequívoca de la voluntad de ejercer la acción de cobro.
>
> **Segundo Error:** Erró el TPI al resolver que los correos electrónicos notificados a Max y Gabriel Olivera no interrumpieron el término prescriptivo por razón de que no se cumplió con el requisito de notificación al deudor.
>
> **Tercer Error:** Erró el TPI al resolver como cuestión de hecho que SJD no logró probar que envió la carta del 5 de enero de 2021, y que por lo tanto, no se activó la presunción del recibo de la carta.
>
> **Cuarto Error:** Erró el TPI al resolver las mociones dispositivas bajo el estándar de la Regla 10.2, sin dar por ciertos todos los hechos bien alegados en la Demanda, y excluyendo prueba que sostuvieron la veracidad de lo alegado.

Luego de conceder la prórroga solicitada, el 16 de octubre de 2023 Max, Margarita, Carlos, Jaime y María, todos con apellidos Olivera Magraner, presentaron su *Alegato en Oposición*. Con el

---

[27] Véase, nota al calce 1.

[28] Apéndice de la *Apelación*, págs. 490-500; además, 503; y *Declaración Jurada*, a las págs. 504-505.

[29] Apéndice de la *Apelación*, págs. 506-507.

beneficio de la comparecencia de los litigantes, procedemos a resolver.

**II**

**A.**

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula un demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. *Colón v. Lotería*, 167 DPR 625, 649 (2006); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). La referida Regla dispone:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) Dejar de exponer una reclamación que justifique la concesión de un remedio; (6) Dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, supra.

Al resolverse una moción de desestimación bajo el fundamento de que la demanda deja "de exponer una reclamación que justifique la concesión de un remedio", el tribunal deberá tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra; *Colón v. Lotería*, supra; *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 504-505 (1994). Además, tales alegaciones hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Colón v. Lotería*, supra, que cita a *Dorante v. Wrangler*, 145 DPR 408 (1998).

La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429. Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada. *Íd.*; *Clemente v. Departamento de la Vivienda*, 114 DPR 763, 771 (1983). Se debe considerar, si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra; *Unisys v. Ramallo Brothers*, 128 DPR 842, 859 (1991).

**B.**

La moción de sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. Procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto a los hechos materiales del caso, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho. *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010).

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria está regido por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En esencia, esta Regla dispone que para emitir una adjudicación de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y alguna otra evidencia, surja que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente y que, como cuestión de derecho, se debe dictar sentencia sumaria a favor

de la parte promovente. Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e). Véanse, además, *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 430; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).

Solo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109-110 (2015); *Const. José Carro v. Mun. Dorado*, supra, pág. 129; *Nieves Díaz v. González Massas*, supra, pág. 848.

La parte que promueve la moción de sentencia sumaria debe establecer su derecho con claridad y, además, como vimos, debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013); *Nieves Díaz v. González Massas*, supra; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). El Tribunal Supremo ha establecido que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010), que cita a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Mun. de Añasco v. ASES et al.*, supra, págs. 326-327. La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, se refiere a estos hechos como "esenciales y pertinentes".

La controversia en cuanto al hecho material tiene que ser real, por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria. *Meléndez González et al. v. M. Cuebas*, supra, pág. 110; *Ramos Pérez v. Univisión*, supra, págs. 213-214. La duda

debe ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Íd.*

Por otro lado, la Regla 36 de Procedimiento Civil, supra, también dispone de manera específica los requisitos de forma que debe cumplir la parte promovente de la moción de sentencia sumaria, así como la parte que se opone a esta. En cuanto al listado de hechos no controvertidos que la parte promovente debe exponer en su solicitud, esta tiene que desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada y otra prueba admisible que lo apoya. *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Íd.*

Según nuestro ordenamiento procesal civil, se les exige tanto al promovente como al opositor de una moción de sentencia sumaria que cumplan con unos requisitos de forma específicos para que pueda considerarse su solicitud. El incumplimiento con estos requisitos tiene repercusiones distintas para cada parte.

De un lado, si el promovente de la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. *Meléndez González et al. v. M. Cuebas*, supra, pág. 111. A *contrario sensu*, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en Derecho. *Íd.* Incluso, si la parte opositora se aparta de las directrices consignadas en esta Regla el tribunal podrá no tomar en consideración su intento de impugnación de los

hechos ofrecidos por el promovente. *Íd.*; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 433.

En resumen, en *SLG Zapata-Rivera v. J.F. Montalvo*, supra, el Tribunal Supremo señaló que el ordenamiento procesal civil de nuestra jurisdicción:

> coloca sobre las partes, quienes conocen de primera mano sus respectivas posiciones, así como la evidencia disponible en el caso, el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene. Se facilita, por lo tanto, el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación. *Íd.,* págs. 433-434.

En cuanto al estándar aplicable al Tribunal de Apelaciones al momento de revisar las determinaciones del foro primario de conceder o denegar mociones de sentencia sumaria, se ha establecido que debemos realizar una evaluación *de novo* de la controversia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 116. En ese análisis estamos facultados a considerar los documentos que se presentaron ante el foro primario, determinar si existe o no alguna controversia genuina de hechos materiales y revisar si se aplicó el Derecho de forma correcta. *Íd.*, Véase, también, *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

## C.

La prescripción extintiva es materia de naturaleza sustantiva, no procesal que, en este caso, se rige por los principios del Código Civil de 1930.[30] *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 373 (2012). A través del transcurso del plazo prescriptivo se extingue

---

[30] En consideración a que la obligación objeto de controversia se perfeccionó bajo la vigencia del Código Civil de 1930, aplicaremos dicho cuerpo normativo y su jurisprudencia interpretativa al asunto planteado. Ello así, en armonía con el Artículo 1812 del Código Civil de 2020, *Actos y contratos celebrados bajo legislación anterior*, 31 LPRA sec. 11717, que dispone: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código".

el derecho a ejercer una causa de acción. El fundamento de la prescripción es promover que las personas que ejerciten su causa de acción la insten de forma oportuna y diligente. *Maldonado Rivera v. Suarez*, 195 DPR 182, 192 (2016). El propósito de esta norma es castigar la inercia que pudiera generar un estado de indefensión producto del transcurso del tiempo, que, a su vez, conlleva consecuencias inevitables, como la pérdida de evidencia. *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143-144 (2001). El efecto neto es que, una vez se agota el término prescriptivo, se extingue el derecho a ejercer la causa de acción, con la correspondiente exoneración para la persona hasta entonces sujeta a responder. *Maldonado Rivera v. Suarez*, supra, pág. 193.

En cuanto al término prescriptivo de la causa del título, el segundo inciso del Artículo 1866 del Código Civil de 1930, 31 LPRA sec. 5296, dispone que, por el transcurso de cinco años, prescriben las acciones para exigir el cumplimiento del precio de los arriendos. No obstante, dicho término está sujeto a interrupción mediante la correspondiente acción judicial; la reclamación extrajudicial; y el reconocimiento de la deuda por parte del deudor. Véase, Art. 1873 del Código Civil de 1930, 31 LPRA sec. 5303. Una vez se efectúe alguna interrupción de modo eficaz, el término prescriptivo comienza a transcurrir nuevamente. *SLG García-Villega v. ELA et al.*, 190 DPR 799, 815 (2014). Es decir, el plazo de prescripción debe volver a computarse por entero desde el momento en que se produce el acto que interrumpe. *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 568 (2001).

La eficacia de la interrupción por conducto de una reclamación extrajudicial dependerá de la oportunidad (que se realice antes de la consumación del plazo), la legitimación (que la realice el titular del derecho), la identidad (que se trate del derecho afectado) y la idoneidad del medio utilizado. *Íd.*, pág. 816. Es

meritorio señalar que la reclamación extrajudicial no requiere ninguna forma especial para que se entienda realizada, por lo que puede plasmarse mediante distintos actos. *Pereira Suarez v. Jta. Dir. Cond.,* 182 DPR 485, 507 (2011). Claro está, toda reclamación extrajudicial debe cumplir con los requisitos de oportunidad, identidad, legitimación e idoneidad. *Galib Frangie v. EL Vocero de P.R.,* 138 DPR 560, 567 (1995).

El elemento de identidad se cumple cuando "la acción ejercitada [corresponde] exactamente al derecho que está afectado por la prescripción". *Íd.* Es necesario que el acreedor realice el acto extrajudicial que interrumpe el plazo, de forma clara e inequívoca; que no deje dudas acerca de su intención. *Íd.* "Ante todo es menester tomar en consideración que lo que la ley considera un acto [interruptor] de la prescripción es el ejercicio de la misma acción que está prescribiendo. Debe existir identidad ente la acción ejercitada y la acción en prescripción". *Cintrón v. ELA,* 127 DPR 582, 593 (1990). En cuanto a la idoneidad del medio, el envío del requerimiento por carta activa la presunción de su recibo, a menos que la prueba demuestre que, como cuestión de hecho, la misiva no fue recibida. Véanse, *Díaz de Diana v. A.J.A.S. Ins. Co.,* 110 DPR 471, 475 (1980); Reglas 301-303 de Evidencia, 32 LPRA Ap. VI.

En lo atinente al caso que nos ocupa, el Tribunal Supremo de Puerto Rico ha reconocido como acto interruptor, y no un mero recordatorio, la presentación de la cuenta o de la factura correspondiente. *Montalvo v. Franceschi,* 48 DPR 313, 314 (1935); *SLG García-Villega v. ELA,* 190 DPR 799, 817 (2014), respectivamente. En su primera acepción, la Real Academia de la Lengua define la voz *factura* como la "[c]uenta en que se detallan con su precio los artículos vendidos o los servicios realizados y que se

entrega al cliente para exigir su pago".[31] De hecho, al citar la doctrina, nuestro Alto Foro expresó:

> [E]ntre el mero recordatorio de una deuda, sin ninguna dosis de reclamar su pago, y el puro acto de simplemente exigir de forma inexorable este, hay una serie de posibilidades intermedias, en las que debe entenderse que hay reclamación —y, por tanto, interrupción de la prescripción— siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad y de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago. *Zambrana Maldonado v. E.L.A.*, 129 DPR 740, 752-753 (1992), que cita a M. Albaladejo, *Comentario al Artículo 1.973 del Código Civil*, 61 Rev. Der. Priv. 987, 989 (1977).

Finalmente, la reclamación extrajudicial no solo aspira interrumpir el término prescriptivo, sino notificar a grandes rasgos la naturaleza de la reclamación y fomentar las transacciones extrajudiciales. *SLG García-Villega v. ELA*, supra; que cita a *Sánchez v. Aut. de los Puertos*, supra.

**III**

En el caso del título, en atención al cuarto señalamiento de error en el que SJD aduce que el TPI no siguió los requerimientos de la Regla 10.2 de Procedimiento Civil, al no dar por ciertos todos los hechos bien alegados y evidenciados, concebimos que el TPI concedió la desestimación de la *Segunda Demanda Enmendada* solamente al amparo de la Regla 10.2 de Procedimiento Civil, supra. No obstante, debido a los asuntos planteados y documentos sometidos en la *Moción Solicitando Desestimación y/o Sentencia Sumaria* presentada por el Sr. Jaime Olivera Magraner y en los escritos judiciales que le siguieron, la adjudicación debió hacerse bajo los rigores de la Regla 36 de Procedimiento Civil, supra.

La moción de desestimación y la moción de sentencia sumaria son mociones dispositivas cuya adjudicación se fundamenta en requisitos procesales y sustantivos distintos. De un lado, al

---

[31] Refiérase a https://dle.rae.es/factura?m=form.

conceder una moción de desestimación, el tribunal toma como ciertas las alegaciones bien hechas en la demanda y, a base del Derecho aplicable, determina que la parte no tiene derecho a la concesión de remedio alguno. Por otro lado, la adjudicación de una moción de sentencia sumaria permite al tribunal examinar los documentos presentados con el fin de determinar, bajo el Derecho aplicable también, si existen o no controversias sobre los hechos medulares. De existir controversias, el pedimento se deniega y el tribunal debe esbozar las cuestiones en controversias y las determinaciones de hechos probadas, de conformidad con la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4.

En el caso de autos, aun si las contenciones se hubieran adjudicado bajo la Regla 36 de Procedimiento Civil, supra, reconocemos que la ausencia de determinaciones de hechos en la *Sentencia* está justificada al palio de la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Ello así, porque el TPI declaró con lugar la moción dispositiva ante su consideración. La citada norma procesal exime a los tribunales de consignar enunciados fácticos al momento de dar lugar a una moción de sentencia sumaria. Es decir, la Regla 36.4 de Procedimiento Civil, supra, únicamente exige que se consignen los hechos controvertidos e incontrovertidos ante una denegación total o parcial de una solicitud dispositiva de sentencia sumaria. *Pérez Vargas v. Office Depot*, 203 DPR 687, 706 (2019).

En los errores primero, segundo y tercero, SJD alega que el TPI incidió al determinar que la causa de acción no fue interrumpida de manera extrajudicial. En particular, sostiene que el TPI se equivocó al disponer que el apelante no manifestó de forma inequívoca su voluntad de ejercer la acción de cobro, por la falta de notificación al deudor y al presuntamente no probar que envió la carta del 5 de enero de 2021.

Por entender que los señalamientos de error están mutuamente relacionados, los abordaremos en conjunto. En todo caso, anticipamos que somos del criterio que SJD interrumpió el término prescriptivo para ejercitar la acción de cobro de los arriendos que alega adeuda la parte apelada. Veamos.

El 13 de junio de 2015, SJD entregó a la mano una factura, junto a un desglose de cuenta. Este medio es mencionado en el contrato como método de cobro. Posteriormente, el 1 de julio de 2015, se entregó la llave de la oficina 1411. En esta fecha, comenzó a cursar el plazo prescriptivo de cinco años.

Vigente el plazo, el 19 de enero de 2016[32] SJD envió un correo electrónico al Sr. Gabriel Olivera Magraner al que unió la factura y el desglose de cuenta. Por igual, estos documentos, junto a una carta, fueron enviados a la Lcda. Carmen López Villafañe, quien representaba a la causante y viuda de Don Max Olivera Mariani. La misiva comienza enunciando que "[c]onforme su solicitud de 14 de enero de 2016". De lo anterior se desprende que las partes litigantes conocían exactamente acerca de la naturaleza de la acción. Por ello, las comunicaciones no deben analizarse en el vacío, ya que evidentemente no era la primera y única gestión entre estas. "[S]ería fútil e inconsecuente requerir a quienes reclaman un derecho extrajudicialmente que, siempre que se comuniquen con el deudor, esbocen nuevamente los hechos que dieron lugar a la reclamación". *De León v. Caparra Center*, 147 DPR 797, 809 (1999).

De otra parte, el Artículo 1874 del Código Civil de 1930, 31 LPRA sec. 5304, disponía como sigue: "La interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores. Esta

---

[32] Cabe apuntar que el Sr. Gabriel Olivera Magraner enajenó su cuota a favor de su madre el 8 de julio de 2016, esto es, luego de recibida la carta de 19 de enero de 2016. Por su parte, el Sr. Max Olivera Magraner hizo lo propio el 5 de agosto de 2016.

disposición rige igualmente respecto a los herederos del deudor en toda clase de obligaciones". Esto es, los herederos del deudor representan a su causante y "conjuntamente le suceden en sus derechos y obligaciones, encontrándose en el mismo caso que los obligados solidariamente en cuanto al pago de las deudas del mismo"; por ello, a los herederos del deudor le aplican las disposiciones de las obligaciones solidarias "en toda clase de obligaciones". *Fuentes v. Trib. de Distrito*, 73 DPR 959, 976-977 (1952). De lo antes expuesto se colige que una acción de cobro de dinero contra algunos herederos interrumpe la prescripción en cuanto a los otros.

Ciertamente, ambas comunicaciones de 2016 cumplieron con los requisitos de la reclamación extrajudicial. Estas fueron enviadas de manera oportuna, dentro del lustro iniciado el 1 de julio de 2015; contaron con legitimidad, al ser remitidas por representantes de SJD; cumplieron con la identidad entre el derecho reclamado y el afectado por el plazo de prescripción; y los medios fueron idóneos. Ello así, porque de la factura incluida en ambos envíos se desprende intrínseca e inequívocamente la manifestación de la voluntad de ejercer la acción de cobro. Más allá de su propia definición, en nuestra sociedad, se estima que una factura equivale a un requerimiento de pago.[33]

Cabe resaltar, además, que en su *Oposición a Moción de Sentencia Sumaria* el Sr. Jaime Olivera Magraner estipuló el hecho de la notificación y no contravino la presunción del recibo. Aun cuando otros hermanos Olivera Magraner no estipularon el hecho, empero estos no se opusieron de conformidad con las normas procesales que gobiernan la solicitud de sentencia sumaria y su

---

[33] Coincidimos con el TPI al considerar como informativos los correos electrónicos, sin factura, enviados el 6 de septiembre y 3 de octubre de 2019, 4 de marzo, 12 de noviembre y 1 de diciembre de 2020, 4 de enero, 1 de febrero y 1 de marzo de 2021.

oposición. Por tanto, debemos concluir que el nuevo plazo vencía el 19 de enero de 2021.

Antes de su expiración, el 5 de enero de 2021 (oportunidad) SJD (legitimidad) envió por correo electrónico al Sr. Gabriel Olivera Magraner y por correo regular[34] a la dirección del Sr. Max Olivera Magraner una nueva misiva (idoneidad del medio), en la que palmariamente el apelante reclamó la acreencia a la que aduce tener derecho (identidad). El envío de esta carta fue igualmente estipulado por el Sr. Jaime Olivera Magraner en su *Oposición a Moción de Sentencia Sumaria*, quien tampoco derrotó la presunción de su recibo. El resto de los hermanos Olivera Magraner tampoco refutaron de manera suficiente en Derecho. En consecuencia, el TPI debió aceptar la existencia de tal hecho. Es forzoso colegir, pues, que nuevamente se interrumpió el término prescriptivo. Luego, el 8 de abril de 2021, SJD interpuso oportunamente la *Demanda* del título. Consiguientemente, el TPI erró al decretar la prescripción de la causa de acción sobre cobro de dinero por concepto de los arriendos.

Ahora, es sabido que los derechos que emergen de un contrato de arrendamiento no son transmisibles por herencia. *Sucn. Álvarez v. Srio. de Justicia*, 150 DPR 252, 268 (2000). Sin embargo, en este caso, el contrato subsistió más allá del fallecimiento de Don Max Olivera Mariani, padre, fallecido el 21 de junio de 2013. Asimismo, varios de los hermanos Olivera Magraner han sido consistentes en invocar que el acuerdo contractual fue novado. Nótese que el contrato pudo haber sido objeto de novación en 2007, cuando el Sr. Gabriel Olivera Magraner lo suscribió en lugar de su padre y/u oficina legal, ya que en autos no obra un poder al respecto; o como referimos, con la muerte de Don Max Olivera Mariani seguida de la

---

[34] Véase, Apéndice de la *Apelación*, págs. 504-505.

continuidad de algunos de sus hijos en posesión del inmueble con el conocimiento y anuencia de SJD. Una posible novación pudo acontecer también en 2011, cuando presuntamente Don Manuel Dubón condonó parte de la deuda al indicarle al Sr. Gabriel Olivera Magraner que no pagara los cánones de arrendamiento de la oficina 1411 hasta el 30 junio de 2012, aun cuando el acuerdo vencía tres meses antes, el 31 de marzo de 2012.

Aún más, los hermanos Olivera Magraner han consignado de manera clara y específica ciertas defensas afirmativas que, de probarse, podrían afectar la liquidez y exigibilidad de la deuda; a saber: pago, transacción y compensación entre el Grupo Olivera y el Grupo Dubón. Además, resalta de los autos el incremento sustancial de la deuda cada mes que esta no es satisfecha. Ello debe alertar al juzgador sobre la onerosidad de cláusulas penales y la imposición de intereses y ponderar si procede o no su intervención.

En fin, al revisar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la resolución abreviada y llevando a cabo todas las inferencias permisibles a su favor, opinamos que existen controversias medulares que ameritan la celebración de un juicio en su fondo. Definitivamente, el TPI no tiene toda la verdad ante sí para justipreciar adecuadamente.[35] Cónsono con lo anteriormente expuesto, procede revocar el dictamen judicial impugnado y devolver el caso ante la atención del TPI para que la reclamación dineraria se vea en sus méritos, a la luz de la defensa afirmativa sustentada sobre novación, en cualquiera de sus modalidades, a saber: extintiva, modificativa, subjetiva por sustitución del deudor o si aplica la doctrina de asunción de deuda. Del mismo modo, deberán examinarse las cláusulas penales e intereses en caso de que requieran su modificación o eliminación,

---

[35] El TPI no permitió la presentación de réplicas ni dúplicas. Apéndice de la *Apelación*, págs. 405-406; 473-474.

así como la existencia o no de pago, transacción, condonación o compensación de la deuda, con el fin de establecer la cuantía adeudada, si alguna. Procesalmente, la etapa para su devolución es idónea, puesto que los contendientes no han presentado el *Informe para el Manejo del Caso*, según surge del Sistema Unificado de Manejo y Administración de Casos (entrada 157).[36]

## IV

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de este dictamen, revocamos la *Sentencia* apelada. Consecuentemente, devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[36] *Orden* de 16 de diciembre de 2022.